## NATIONAL LABOR RELATIONS BOARD *v.* WALTON MANUFACTURING CO. ET AL.

No. 77.   Argued March 19, 1962.—Decided April 9, 1962.*

---

*Together with No. 94, *National Labor Relations Board* v. *Florida Citrus Canners Cooperative,* also on certiorari to the same Court, argued March 19–20, 1962.

*Norton J. Come* argued the cause for petitioner in both cases. With him on the briefs were *Solicitor General Cox, Stuart Rothman, Dominick L. Manoli, Frederick U. Reel, Russell Specter* and *Allan I. Mendelsohn.*

*Robert T. Thompson* argued the cause for respondents in No. 77. With him on the briefs was *Alexander E. Wilson, Jr.*

*O. R. T. Bowden* argued the cause and filed briefs for respondent in No. 94.

Per Curiam.

These cases are here on petitions for certiorari to the Court of Appeals for the Fifth Circuit, which refused enforcement of orders of the Board. We granted certiorari (368 U. S. 810, 812) because there was a seeming noncompliance by that court with our admonitions in *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474. We there said that while the "reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view," it may not "displace the Board's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*" *Id.,* at 488.

Each of these cases involves alleged discriminatory discharges of employees in violation of the National Labor Relations Act, 29 U. S. C. § 158 (a)(3); and in each the Board ordered, *inter alia,* reinstatement of the workers in question with back pay. See 124 N. L. R. B. 1331, 124 N. L. R. B. 1182. In that type of case the Fifth Circuit has fashioned a special rule that was announced in *Labor*

*Board* v. *Tex-O-Kan Flour Mills Co.*, 122 F. 2d 433, a decision rendered in 1941. In case of a cease-and-desist order, the court said that it generally "costs no money and only warns to observe a right which already existed; evidence short of demonstration may easily justify such an order." *Id.*, at 438. But the court established a more onerous rule for reinstatement cases:

"Orders for reinstatement of employees with back pay are somewhat different. They may impoverish or break an employer, and while they are not in law penal orders, they are in the nature of penalties for the infraction of law. The evidence to justify them ought therefore to be substantial, and surmise or suspicion, even though reasonable, is not enough. The duty to weigh and test the evidence is of course on the Board. This court may not overrule a fact conclusion supported by substantial evidence, even though we deem it incorrect under all the evidence. . . . In the matters now concerning us, the controlling and ultimate fact question is the true reason which governed the very person who discharged or refused to reemploy in each instance. There is no doubt that each employee here making complaint was discharged, or if laid off was not reemployed, and that he was at the time a member of the union. In each case such membership may have been the cause, for the union was not welcomed by the persons having authority to discharge and employ. If no other reason is apparent, union membership may logically be inferred. Even though the discharger disavows it under oath, if he can assign no other credible motive or cause, he need not be believed. But it remains true that the discharger knows the real cause of discharge, it is a fact to which he may swear. If he says it was not union membership or activity, but

something else which in fact existed as a ground, his oath cannot be disregarded because of suspicion that he may be lying. There must be impeachment of him, or substantial contradiction, or if circumstances raise doubts, they must be inconsistent with the positive sworn evidence on the exact point." *Id.*, at 438–439.

This special rule concerning the weight of the evidence necessary to sustain the Board's orders *for reinstatement with back pay* has been repeatedly followed by the Fifth Circuit Court of Appeals in decisions refusing enforcement of that particular type of order. See *Labor Board* v. *Williamson-Dickie Mfg. Co.*, 130 F. 2d 260; *Labor Board* v. *Alco Feed Mills*, 133 F. 2d 419; *Labor Board* v. *Ingram*, 273 F. 2d 670; *Labor Board* v. *Allure Shoe Corp.*, 277 F. 2d 231; *Frosty Morn Meats, Inc.*, v. *Labor Board*, 296 F. 2d 617.

The Court of Appeals in No. 77, *Labor Board* v. *Walton Mfg. Co.*, 286 F. 2d 16, 25, in resolving the issue of credibility between witnesses for the employer and witnesses for the union, as to the reasons for the discharge of the employees in question, relied on the test stated in *Labor Board* v. *Tex-O-Kan Flour Mills Co.*, *supra.* In No. 94, *Labor Board* v. *Florida Citrus Canners Cooperative*, 288 F. 2d 630, decided less than three months later, the *Tex-O-Kan* opinion was not mentioned. But its test of credibility of witnesses seemingly was applied. 288 F. 2d, at 636–638.

There is no place in the statutory scheme for one test of the substantiality of evidence in reinstatement cases and another test in other cases. *Labor Board* v. *Pittsburgh S. S. Co.*, 340 U. S. 498, and the *Universal Camera Corp.* case, both decided the same day, were cases involving reinstatement. They state a rule for review by Courts of Appeals in all Labor Board cases. The test in the

*Tex-O-Kan* opinion for reinstatement cases is that the employer's statement under oath must be believed unless there is "impeachment of him" or "substantial contradiction," or if there are "circumstances" that "raise doubts" they must be "inconsistent with the positive sworn evidence on the exact point." But the Examiner—the one whose appraisal of the testimony was discredited by the Court of Appeals in the *Florida Citrus Canners Cooperative* case—sees the witnesses and hears them testify, while the Board and the reviewing court look only at cold records. As we said in the *Universal Camera* case:

> ". . . The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case." 340 U. S., at 496.

For the demeanor of a witness

> ". . . may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating, and that, if he is, there is no alternative but to assume the truth of what he denies." *Dyer* v. *MacDougall,* 201 F. 2d 265, 269.

We are in doubt as to how the Court of Appeals would have decided these two cases were it rid of the yardstick for reinstatement proceedings fashioned in its *Tex-O-Kan* decision. The reviewing function has been deposited, not here, but in the Court of Appeals, as the *Universal Camera* case makes clear. We "will intervene only . . . when the standard appears to have been misapprehended or grossly misapplied." 340 U. S., at 491. Since the

special rule for reinstatement cases announced in the *Tex-O-Kan* opinion apparently colored the review given by the Court of Appeals of these two orders, we remand the cases to it for reconsideration.

*Reversed.*

MR. JUSTICE FRANKFURTER, whom MR. JUSTICE HARLAN joins, dissenting.

These cases were brought here on the claim that the Court of Appeals had exceeded its reviewing power over orders of the National Labor Relations Board under the National Labor Relations Act, 29 U. S. C. § 160 (e), requiring that "the record considered as a whole" be canvassed. The Court does not find that the court did not assess the evidence, including inferences fairly to be drawn, in accordance with the scope of judicial review outlined in *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, and its companion case, *Labor Board* v. *Pittsburgh S. S. Co.,* 340 U. S. 498. But it remands the cases to the Court of Appeals because of doubt whether that court was improperly influenced in its determinations by what is deemed an erroneous legal rule as applied in *Labor Board* v. *Tex-O-Kan Flour Mills Co.,* 122 F. 2d 433.

I am constrained to disagree with the Court's disposition of these cases on three grounds. First, the Court assumes legal identity between two cases that raise entirely different issues. Second, in neither case did the Court of Appeals apply a special and more stringent rule of review in cases of reinstatement for wrongful discharge. Finally, I think the *Tex-O-Kan* rule, insofar as it was applied below in *Walton* and is disapproved here, is in accord with prior decisions of this Court and does not conflict with the substantial evidence rule.

The Court of Appeals in *Walton* accepted findings by the Trial Examiner and the Board, 124 N. L. R. B. 1331,

that respondents had violated § 8 (a)(1) of the National Labor Relations Act, 29 U. S. C. § 158 (a)(1), by surveillance of union activities, interrogations of employees regarding the union, and threats of reprisals for union adherence. But the court refused to enforce an order to reinstate a number of employees with back pay, holding on its reading of the same dead record that the Board had before it, that there was not substantial evidence to support the Board's findings that the employees had been discharged or laid off because of their union membership and activities. 286 F. 2d 16.

In *Florida Citrus* the Examiner and the Board found that the respondent had refused to bargain as required by § 8 (a)(5), and therefore that employees who had participated in a resulting strike had been discharged and replaced in violation of § 8 (a)(1) and (3). 124 N. L. R. B. 1182. The Court of Appeals denied enforcement of the order to cease and desist, to bargain on request, and to reinstate the discharged employees with pay; it did so because it concluded, on consideration of the record as a whole, that the critical finding of refusal to bargain was not supported by substantial evidence. 288 F. 2d 630.

The Court today reverses both decisions for misapplication of the standard of review set forth in § 10 (e) of the National Labor Relations Act, 29 U. S. C. § 160 (e), and § 10 (e) of the Administrative Procedure Act, 5 U. S. C. § 1009 (e), and elaborated in *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, that "The findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall be conclusive." The Court finds that the Court of Appeals may have erroneously adopted a special rule for cases of reinstatement for wrongful discharge, forbidding the Board to discredit an employer's testimony as to the reason for discharge unless he is

impeached or contradicted. These decisions are reversed because in *Walton* the Court of Appeals "relied on the test stated in *Labor Board* v. *Tex-O-Kan Flour Mills Co.*," 122 F. 2d 433, and in *Florida Citrus,* although *Tex-O-Kan* was not cited, "its test of credibility of witnesses seemingly was applied."

## 1. *Tex-O-Kan.*

That case came before the Court of Appeals for the Fifth Circuit in 1941. Judge Sibley, writing for the court, found ample evidence to sustain a cease-and-desist order against interference with union activity: "a cease and desist order on this point costs no money and only warns to observe a right which already existed; evidence short of demonstration may easily justify such an order." 122 F. 2d, at 438. But, he continued,

> "Orders for reinstatement of employees with back pay are somewhat different. They may impoverish or break an employer, and while they are not in law penal orders, they are in the nature of penalties for the infraction of law. The evidence to justify them ought therefore to be substantial, and surmise or suspicion, even though reasonable, is not enough."

Accepting that the union membership of each discharged employee "may have been the cause, for the union was not welcomed by the persons having authority to discharge and employ," the court enforced the back-pay order in several instances where no other reason for discharge was apparent, or where the reason given was refuted by the facts. But where management gave reasons for the discharge that were not contradicted by the facts—that a job had been abolished, that work had been inadequately done, that an employee had engaged in irregular conduct with company property or failed to report

the taking of sick leave—the court held the findings of
anti-union animus to be without substantial support:

> "[I]t remains true that the discharger knows the real
> cause of discharge, it is a fact to which he may swear.
> If he says it was not union membership or activity,
> but something else which in fact existed as a ground,
> his oath cannot be disregarded because of suspicion
> that he may be lying. There must be impeachment
> of him, or substantial contradiction, or if circum-
> stances raise doubts, they must be inconsistent with
> the positive sworn evidence on the exact point. This
> was squarely ruled as to a jury in Pennsylvania R. R.
> Co. v. Chamberlain, . . . and the ruling is applicable
> to the Board as fact-finder." 122 F. 2d, at 439.

### 2. *History of Tex-O-Kan in the Fifth Circuit.*

In numerous cases *Tex-O-Kan* has been cited and
quoted by the Court of Appeals for its view that testi-
mony justifying discharge should not lightly be disre-
garded. *Labor Board* v. *Goodyear Tire & Rubber Co.,*
129 F. 2d 661, 665; *Labor Board* v. *Alco Feed Mills,* 133
F. 2d 419, 421; *Labor Board* v. *Oklahoma Transp. Co.,*
140 F. 2d 509, 510; *Labor Board* v. *Edinburg Citrus Assn.,*
147 F. 2d 353, 355; *Labor Board* v. *McGahey,* 233 F. 2d
406, 411–412; *Labor Board* v. *Drennon Food Products Co.,*
272 F. 2d 23, 27; *Labor Board* v. *Walton Mfg. Co.,* 286
F. 2d 16, 25; *Labor Board* v. *Atlanta Coca-Cola Bottling
Co.,* 293 F. 2d 300, 306. See also *Frosty Morn Meats,
Inc.,* v. *Labor Board,* 296 F. 2d 617, 620–621, where *Tex-
O-Kan* was not cited. On occasion *Tex-O-Kan* has also
been quoted to distinguish between cease-and-desist
orders and those requiring payment of back pay. *Labor
Board* v. *Williamson-Dickie Mfg. Co.,* 130 F. 2d 260, 263;
*Labor Board* v. *Ingram,* 273 F. 2d 670, 673. The *Tex-O-*

*Kan* credibility view has also been applied by the court in determining whether to enforce an order requiring payment of a bonus found to have been withheld in order to discourage union activity. *Labor Board* v. *Crosby Chemicals, Inc.*, 274 F. 2d 72, 78. It has not been cited on the issue of credibility in cases involving only cease-and-desist orders.

### 3. *A Special Rule for Reinstatement?*

I agree with the Court that, despite the consequences of back-pay orders, "There is no place in the statutory scheme for one test of the substantiality of evidence in reinstatement cases and another test in other cases." However, although the Court of Appeals has several times in the past seemingly applied two different rules, and although it has not relied on *Tex-O-Kan* in cases dealing solely with cease-and-desist orders, I do not think either of the present cases presents an appropriate occasion for admonishing that court against applying a double standard. Both cases concerned both cease-and-desist orders and reinstatement with back pay. In neither did the Court of Appeals suggest that it was applying a special rule for reinstatement orders alone. The part of the *Tex-O-Kan* opinion differentiating back-pay from cease-and-desist orders, quoted by this Court, was not quoted by the Court of Appeals in either case. In *Walton* the court said only that "The requirements of substantiality of evidence and reasonableness of the inferences to be drawn from the evidence are not less in a case of reinstatement and reimbursement than where a cease and desist order is directed against interference"—not that the requirements are more strict. In *Florida Citrus* the single factual issue whether respondent had refused to bargain underlay both back-pay and cease-and-desist orders. The court

properly dealt with this as a single issue and did not purport to apply different standards of review for purposes of various parts of the order. *Tex-O-Kan* was nowhere cited.

### 4. *Tex-O-Kan's Credibility Rule and the Present Cases.*

(1) In *Florida Citrus* collective bargaining had broken off shortly after a disastrous freeze that threatened future business. The Trial Examiner found that the company was responsible for the failure of bargaining. He recited a delay in meeting which he attributed to the company. He referred to the company's refusal to discuss the union's proposal at a meeting held just after the freeze, and to the company's failure in the face of union demands to request a postponement of negotiations to permit assessment of the effect of the freeze, as it had announced it intended to do. Finally, by resolving conflicting testimony in favor of the General Counsel's witnesses, he found that after the failure of negotiations the company had made anti-union statements and offered inducements to the employees should they forsake the union. This finding buttressed his interpretation of the company's earlier conduct when bargaining was called off. In rejecting the testimony of production manager Stephenson and accepting that of Holly, an employee to whom the alleged anti-union statements and promises had been made, the Examiner relied in part on a comparison of the demeanor of these two witnesses, saying also that Stephenson admitted such subjects as a company union had come up in the conversation; that many of the statements he was said to have made later came true; and that Holly was a logical choice to speak such sentiments to because he might reasonably have been induced to lead a movement of defection from the union.

The Court of Appeals held the finding of refusal to bargain to be without substantial support. It ruled that the Board could not reasonably infer a refusal to bargain from the company's refusal to make a formal request for postponing negotiations, since the union had issued an ultimatum that in effect rejected the request. Moreover, it rejected the Board's determinations of credibility. The court made it clear that it believed the Examiner's findings to have been based on "the belief that reliance may not be placed upon the testimony of a witness who is a part of the management of an employer in a controversy with a labor union." Beyond this, the court declared it was unable to accept the Examiner's crediting of Holly and discrediting of Stephenson because there was no prior indication of company opposition to the union and because it was unlikely that a manager would divulge the details of company labor policy to a watchman. As to a conflict in testimony between Stephenson and Wingate, the union's chief representative, the court ruled that Wingate's testimony should have been "more carefully scrutinized" because the Examiner himself had found Wingate sometimes inaccurate or careless.

The Board attacks this decision as in conflict with the substantial evidence test of the Labor Management Relations Act and of the *Universal Camera* doctrine. The crux of its objection is that the court has substituted its judgment as to credibility for that of the Examiner and the Board; in particular, it complains that the record gives no support to the court's conclusion that the Examiner was inclined to discredit on principle all company witnesses. Neither in its petition for certiorari nor its brief on the merits did the Board cite *Tex-O-Kan* as the ground of its objection to the decision in *Florida Citrus*. Yet this Court reverses the Court of Appeals' decision without reference to the facts or the holding of that case,

saying simply that the *Tex-O-Kan* "test of credibility of witnesses seemingly was applied." But *Tex-O-Kan* was no more relied on by the Court of Appeals than it was attacked in this case by the Board. *Tex-O-Kan* forbids the Examiner and the Board to dismiss summarily management's reasons for a discharge if not contradicted, impeached, or inherently improbable. *Florida Citrus* was not a case of uncontradicted testimony. It was not a case in which motivation for a discharge was in doubt. The issue was what Stephenson said to the Board's witnesses; the problem was a conflict of testimony. To be sure, the Board argues that both *Florida Citrus* and *Tex-O-Kan* are manifestations of the same attitude of hostility to findings of the Labor Board. But if the Court of Appeals strayed outside the *Universal Camera* bounds, it did not do so by discrediting uncontradicted testimony pursuant to *Tex-O-Kan.* If this Court is of the opinion that the Court of Appeals unjustifiably substituted its own judgment for that of the Board, it ought to say so. The Court of Appeals ought not to be reversed for following a decision it did not follow.

(2) *Walton,* by contrast, squarely presents a *Tex-O-Kan* problem. Four employees had been discharged and nine more laid off. The Trial Examiner, in each case rejecting company testimony that the employee was a substandard performer, attributed all thirteen to the employees' union activities. The Board agreed. In holding all these findings to be without substantial support, the Court of Appeals pointed out in the case of the four discharges that in addition to the company's witnesses there was evidence, sometimes given by the employee herself, either of unsatisfactory work or of meager union activity, or both. But in reversing the Board with respect to the nine layoffs the court quoted and relied on *Tex-O-Kan,* pointing out that management

testimony, unimpeached, assigned plausible grounds for selecting each employee for layoff, and that the factual bases for these statements were largely uncontradicted.

### 5. *Tex-O-Kan and the Substantial Evidence Test.*

This Court today lays down a dogmatic rule against a Fifth Circuit evidentiary practice authorizing acceptance of plausible, uncontradicted, unimpeached testimony of motivation and apparently holds the Board's power in reviewing the dead record to determine witness credibility to be absolute and unreviewable:

> "the demeanor of a witness '. . . may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story . . . .' "

This statement, torn from context in Judge Learned Hand's opinion in *Dyer* v. *MacDougall,* 201 F. 2d 265, 269, is elevated into a rule of law that ignores earlier decisions of this Court and effectively insulates many administrative findings from judicial review, contrary to the command of the Labor Management Relations Act and the Administrative Procedure Act that such findings should be set aside if not supported by substantial evidence on the whole record.

The cases abound with statements that the determination of credibility is for the trier of fact and is not to be upset on appeal. *E. g., Tractor Training Service* v. *Federal Trade Commission,* 227 F. 2d 420, 424 (C. A. 9th Cir.); *Kitty Clover, Inc.,* v. *Labor Board,* 208 F. 2d 212, 214 (C. A. 8th Cir.). Professor Jaffe has said "It is generally held that whether made by jury, judge, or agency a determination of credibility is nonreviewable unless there is uncontrovertible documentary evidence or physical fact which contradicts it." Judicial Review: Question of Fact,

69 Harv. L. Rev. 1020, 1031. It is this view that has led some courts to hold that a verdict cannot be directed in favor of a party having the burden of proof if his case rests on the credibility of witnesses, *e. g., Giles* v. *Giles,* 204 Mass. 383, 90 N. E. 595. Likewise, Professor Davis speaks of it as settled "that a trial tribunal may disbelieve the only evidence presented and dispose of the case by holding against the party having the burden of proof," Administrative Law Treatise, § 29.06, p. 148. Even in reviewing the findings of a trial judge sitting without a jury, where the standard of review permits closer scrutiny by the Court of Appeals, Rule 52 (a) of the Federal Rules of Civil Procedure requires that "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." And in *Labor Board* v. *Pittsburgh S. S. Co.,* 337 U. S. 656, 660, this Court held that the Board's crediting of all General Counsel's witnesses and discrediting of all respondent's does not indicate bias, so long as none of the credited testimony "carries its own death wound" and none of that which was rejected "carries its own irrefutable truth."

The opportunity of the trier of fact to observe the demeanor of witnesses should not be overlooked. But neither should it be overlooked that the Board itself has no opportunity to observe the demeanor of witnesses. Yet the Board is not required to accept a trial examiner's credibility findings, see *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, 492–497, and, therefore, neither is the Court of Appeals. Even where the fact-finding function is not divided, "due regard" for the advantage of the trier of fact does not require appellate impotence. Judge Hand's statement in *Dyer* v. *MacDougall* was one of logic, not of law; the court went on to affirm a summary judgment against the plaintiff, who presented no evidence and relied on the chance that defendant's witnesses would be disbelieved in their denials—because, despite the logi-

cal possibility that demeanor alone might convince of the affirmative, to deny summary judgment would have destroyed the effectiveness of judicial review. Indeed, this Court has never before required complete deference to credibility findings. *Labor Board* v. *Pittsburgh S. S. Co.,* 337 U. S. 656, does not so hold; a great many findings not so unfounded as to indicate bias are nonetheless reversible error. In *Universal Camera Corp.* v. *Labor Board,* 340 U. S. 474, 490, this Court declared that Labor Board findings must be set aside when the record "clearly precludes the Board's decision from being justified by a fair estimate of the worth of the testimony of witnesses or its informed judgment on matters within its special competence or both." A "fair estimate of the worth of the testimony" hardly suggests that the Board is free to make an unfair estimate, especially in the light of the decision in *Universal Camera* that "courts must now assume more responsibility for the reasonableness and fairness of Labor Board decisions than some courts have shown in the past. . . . Congress has imposed on them responsibility for assuring that the Board keeps within reasonable grounds." Professor Davis states frankly that "Administrative determinations of credibility are often set aside because the reviewing court firmly believes that the evidence supporting the determination is clearly less credible than the opposing evidence," Administrative Law Treatise, § 29.06, p. 145. Professor Jaffe concedes that his general rule of deference to credibility findings is not unyielding and agrees that this may be proper: "even on a credibility issue we should probably not tolerate the intuitive 'hunch' where the record evidence overwhelmingly points to the contrary." 69 Harv. L. Rev., at 1032.

In fact, *Tex-O-Kan* is clearly supported by at least two decisions of this Court requiring a trier of fact to accept unimpeached testimony not contradicted by substantial evidence in the record. In *Dickinson* v. *United States,*

346 U. S. 389, a draft board had classified petitioner I–A for Selective Service purposes despite his uncontradicted testimony, letters, and an affidavit that he was an ordained minister exempted from service. Notwithstanding its holding that such an order was subject to more limited scrutiny than most agency orders, the Court reversed his conviction for refusing to report for induction:

> "The court below in affirming the conviction apparently thought the local board was free to disbelieve Dickinson's testimonial and documentary evidence even in the absence of any impeaching or contradictory evidence. . . . But when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice." 346 U. S., at 396–397.

In *Chesapeake & Ohio R. Co.* v. *Martin*, 283 U. S. 209, the Court reversed a trial judge's refusal to sustain a demurrer to the evidence on the ground that a complete defense was established by uncontradicted, unimpeached testimony. Quoting at length from cases in other courts upholding appellate review of credibility determinations, the Court concluded:

> "We recognize the general rule, of course, as stated by both courts below, that the question of the credibility of witnesses is one for the jury alone; but this does not mean that the jury is at liberty, under the guise of passing upon the credibility of a witness, to disregard his testimony, when from no reasonable point of view is it open to doubt." 283 U. S., at 216.

In short, the Court of Appeals was entitled to come to the conclusion to which it came, for neither the Board nor the reviewing court was bound by the Examiner's findings

on credibility. I do not think the Court of Appeals applied an erroneous standard of review or grossly misapplied the correct standard, and, therefore, since it is not for this Court to "pass on the Board's conclusions in the first instance or to make an independent review of the review by the Court of Appeals," *Labor Board* v. *Pittsburgh S. S. Co.,* 340 U. S. 498, 502, I would either affirm the cases or, preferably, dismiss the writs as improvidently granted.