**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LATEX INDUSTRIES, INC., Respondent.**

**No. 14733.**

United States Court of Appeals Sixth Circuit.

Sept. 11, 1962.

Janet Kohn, Washington, D. C. (Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Samuel M. Singer, Atty., N. L. R. B. Washington, D. C., on the brief), for petitioner.

Roy E. Browne, Akron, Ohio (Hershey, Browne, Wilson, Steel, Cook & Wolfe, Akron, Ohio, on the brief), for respondent.

Before MILLER, Chief Judge, WEICK, Circuit Judge, and STARR, Senior District Judge.

WEICK, Circuit Judge.

The Board found that the respondent, Latex Industries, Inc., violated Section 8 (a) (1) of the National Labor Relations Act, as amended (29 U.S.C.A. § 151 et seq.) by discharging five of their employees, namely, Hess, Ruder, Buehler, Rozell and Blough because of their concerted presentation of demands and grievances relative to wage increases, bonuses, vacations and other conditions of employment and held that these concerted activities were protected by Section 7 of the Act. The Board ordered Latex to reinstate the employees with back pay.

The alleged violation grew out of a meeting between eleven employees and Vice President Allen of Latex on October 27, 1960 in which the employees had presented their grievances. The discharge of five occurred on the following day. The Board drew an inference that because the discharges followed on the day after the meeting they must have been based on the concerted activities of said employees at the meeting.

Latex resists enforcement of the Board's order on the ground that it was not supported by substantial evidence. It claims that the inference as to discrimination drawn by the Board was wholly unwarranted; that the discharges were not on account of any of the concerted activities protected by Section 7 of the Act, but for causes not related thereto.

This requires our examination of the whole record in order to determine whether substantiality exists. We may set aside a decision of the Board only when we "cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." Universal Camera Corp. v. National Labor Relations Board, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456; National Labor Relations Board v. Walton Manufacturing Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829.

Latex was a small company engaged in the manufacture of surgical catheters. Its plant was located at Chippewa Lake, Ohio. It employed only thirteen women. Eleven of these women had attended the meeting with Vice President Allen. The other two were absent from work on that day. The employees were not represented by a labor union. There was no evidence of antipathy on the part of Latex against organized labor.

The evidence is clear that, apart from the protected activities of these employees on October 27, Latex was experiencing considerable trouble with at least three of them.

Hess and Ruder were dippers. They took as many as six breaks in the course of a day in addition to two authorized breaks. They took more than the allotted time of ten minutes in the authorized breaks. They would go to the ladies rest room and smoke. In order to provide

time for the breaks, they would speed up their work. They were told by the plant manager that they were not paying attention to written procedure and were "missing dips"; that they were leaving their work area too often during the day; and that they would be discharged if they did not cooperate.

In the middle of the previous July rejections of defective catheters approximated about 39%. While the Trial Examiner found that there was no evidence that the rejections were caused "exclusively" by the dippers, Latex was of the view that they were a prime factor. Latex reduced the work load of the dippers so that they could work more slowly and carefully. This had no effect on Hess and Ruder who ignored the instructions of their supervisors and continued to speed up their work. The Trial Examiner found that "To a certain extent this was admitted by the employees themselves." The Trial Examiner found "Catheters are delicate surgical instruments made by hand requiring skill and attention to detail. Defective catheters are dangerous to patients and care is required that they not be shipped to hospitals unless perfect. Perfection in workmanship was, according to the testimony, one of respondent's major problems."

The record is replete with evidence as to warnings by the supervisors to these employees and of meetings prior to October 27, when the supervisors discussed the matter of firing them. It was first discussed in July.

Beuhler had an uncontrollable temper. She would flare into temperamental rages two or three times a week. On one occasion when talking with the technical superintendent of the plant she threw fifty catheters, which were in her hands, at the table in the room and some of them went on the floor. She would fight with other employees. She got into loud arguments with supervision and criticized plant overhead, company offices, new equipment and automobiles of officers. On several occasions she refused to explain to Ellis, the quality control superintendent, why she had rejected certain catheters. In arguing with Ellis she shoved a table at him for which she was suspended for five days. She refused to pass catheters which Ellis determined were all right unless he would sign a scrap sheet. He told her to put certain catheters in production. He later endeavored to locate these catheters and asked her where they were and she said "They are around," but she would not tell him where.

In our opinion, management was not required to tolerate such conduct on the part of employees even though their other activities were protected by the Act. This is particularly true in a business such as Latex where extreme care and precision were required for the safety of hospital patients and other users of its products. It was probably the straw that broke the camel's back when these employees went over the head of the plant superintendent to the Vice President on October 27 to air their grievances which culminated with sharp criticism of management policies and the meeting was described by management as being disorderly and uproarious.

██ Latex had the right to hire and discharge employees at will without violating the National Labor Relations Act so long as its action was not based on the concerted activities. National Labor Relations Board v. West Ohio Gas Co., 172 F.2d 685 (C.A. 6).

We think the evidence was sufficient to dispel any inference of discriminatory discharge of Hess, Ruder and Buehler and as to them the Board's order is not supported by substantial evidence.

In our opinion, the evidence was insufficient to dispel the inference of discriminatory discharge with respect to Rozell and Blough.

There was some evidence that Rozell had neglected to follow Ellis' suggestion as to washing catheters individually instead of in bunches, but this was not an operating procedure. She had been previously suspended for calling her fore-

man a liar, but she paid the penalty for that. She was also critical of management at the meeting on October 27th, but that was too closely connected with protected activities to be used as a basis for discharge.

As to Blough, the evidence of misconduct was weak. Blough had requested an increase in pay or to be returned to her former job as a stripper. We doubt whether she would have been discharged except for her participation in the meeting of October 27th.

The Board's order was supported by substantial evidence with respect to Rozell and Blough.

An order will, therefore, be entered enforcing the order of the Board with respect to Rozell and Blough and denying enforcement as to Hess, Ruder and Buehler.