**AERONCA MANUFACTURING COMPANY, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**

**International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, UAW–AFL–CIO, Intervenor.**

No. 21305.

United States Court of Appeals
Ninth Circuit.

Nov. 1, 1967.

Sweeney, Cozy & Foye, Mathias ·J. Diederich (argued), Los Angeles, Cal., for petitioner.

Arnold Ordman, General Counsel., Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Solomon I. Hirsh, Atty. (argued), N.L.R.B., Washington, D. C., for respondent.

Arnold, Smith & Schwartz, Laurence D. Steinsapir, Los Angeles, Cal., for the intervenor, International Union, United Automobile, Aerospace & ·Agricultural Implement Workers of America, UAW–AFL–CIO.

Before BARNES and DUNIWAY, Circuit Judges, and HAUK*, District Judge.

HAUK, District Judge:

This proceeding ·involves a petition of the Aeronca Manufacturing Company to review an order of the National Labor Relations Board requiring the Company to cease and desist from unfair labor practices, to reinstate a discharged employee, Robert Hanke, with back pay, and to post appropriate notices. In its answer, the Board has requested enforcement of its order, which is reported at 160 NLRB No. 35 (August 9, 1966); 1966 CCH NLRB, par. 20,671, p. 26,502; 62 LRRM 1645. Jurisdiction of this court has been invoked pursuant to Section 10(e) and 10(f), as amended, of the National Labor Relations Act, 29 U.S.C., Sec. 160(e) and 160(f), the unfair labor practices allegedly having occurred in Torrance, California, where the petitioner transacts its business and has its plant.

* Hon. A. Andrew Hauk, United States District Judge, Los Angeles, California, sitting by designation.

On June 2, 1965, the Union began an organization drive among the Company's employees and, pursuant to a stipulation for certification which the Company and the Union entered into, a representation election was conducted on September 9, 1965. The Union lost the election, but, on the basis of objections which the Board found to be meritorious, the election was set aside and a new election was directed. During the course of the campaign, the employee, Robert Hanke, was discharged after a minor fracas with a Company foreman who was not his immediate superior.[1]

The Union filed charges with the Board that the Company had discharged Hanke, in violation of Section 8(a) (1) [2] and (3) [3] of the Act, because of his activities on behalf of the Union, and that the Company, during the course of its pre-election campaign to defeat the Union, had interfered with, restrained and coerced its employees in violation of the same sections of the Act. The Company subsequently filed an answer denying that it had engaged in the unfair labor practices charged.

Following a hearing held in Los Angeles, California, on March 2 and 3, 1966, the Trial Examiner of the National Labor Relations Board issued his decision finding that the Company had discharged Hanke because of his union activities and had, during its pre-election campaign, interfered with, restrained and coerced its employees in violation of Section 8(a) (1) of the Act, to which decision the Company filed exceptions.

On August 9, 1966, the Board adopted the findings of the Trial Examiner and issued its order requiring that the Company cease and desist from the unfair labor practices, offer to Hanke reinstatement to his former position or an equivalent position, make him whole for any loss of earnings suffered by reason of the discrimination against him, and post the appropriate notices in the form prepared by the Trial Examiner and set forth in the Appendix to his decision.

Thereafter, the Company filed a petition for review, the Board submitted its answer and cross-application for enforcement, and the Union moved for leave to intervene, which was granted. The

1. The Board, in adopting the findings of the Trial Examiner, found that the events surrounding the discharge were accurately summarized in the written statements submitted to Cooper, the manager of quality assurance, by the foreman Citrowski and by two other foremen, Harris and Tremaine, who had been in the immediate vicinity of the episode. In resolving the conflict between the testimony of Citrowski that Hanke had deliberately knocked him against the table and the testimony of Hanke that Citrowski had bumped into him, the Trial Examiner found that "there was an altercation between Hanke and Citrowski during which Hanke nudged Citrowski sufficiently hard as to throw the latter partially off balance."

In addition, the Board, in adopting such findings, found that on "the day that Hanke was discharged, he behaved offensively toward foreman Citrowski (rather than insubordinately as the conduct had been characterized by Cooper) and that he made the so-called threats against the Company."

As a result of these findings, the Board concluded that Hanke had been discrim-

inatorily discharged because "there was nothing in the nature of the misconduct of which Hanke was accused that warranted such extraordinary action" and "there were significant departures from the Company's usual procedures."

2. "Section 8. (a). It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." (29 U.S.C. Sec. 158).
Section 7 provides: "Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." (29 U.S.C., Section 157).

3. "Section 8. (a). It shall be an unfair labor practice for an employer—* * * (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." (29 U.S.C. Sec. 158).

sole point and only specification of error which the Company presents in its petition for review is that the Board erred in finding and concluding that a substantial motivating reason for Hanke's discharge was his union activities.

The Company contends that Hanke was discharged because, on the morning of August 9, 1965, he had been insubordinate to one foreman and had told two other foremen that he had been keeping a book which contained harmful information about the Company. The Board found, however, that the events of that morning served only as a pretext, and that Hanke would not have been discharged had he not been so active on the Union's behalf.

If the findings of the Board with respect to unfair labor practices are "supported by substantial evidence on the record considered as a whole," they are "conclusive" upon this court in a proceeding to review and enforce an order of the Board.[4] But discharge and reinstatement cases have given rise to numerous and often conflicting statements in the articulation of this guideline. As we have pointed out recently:

"There is more than enough scripture upon the subject to enable any devil to cite some of it for his purpose. We think it quite unnecessary to discuss, much less to try to reconcile, all of the statements made by various judges on the subject, or even all of the statements appearing in the opinions in the cases cited. The statute commands that we examine the record of each case to ascertain whether the findings of the Board are supported by substantial evidence on the record considered as a whole. This is not always easy, and judges may, and sometimes do, disagree about the result. On its facts, each case is unique." Shattuck Denn Mining Corp. v. N.L.R.B., 362 F.2d 466, 469 (9th Cir., 1966).

In examining the record in each case we must respect the duties of the trier of fact to decide whom to believe, to reconcile conflicting evidence, and to draw such inferences as the evidence reasonably supports.[5] And since there is only one standard in the statutory scheme of the Act for determining the substantiality of evidence,[6] the legal test which we drew from N.L.R.B. v. Ace Comb Co.,[7] and quoted in Shattuck,[8] is this:

"It has long been established that for the purpose of determining whether or not a discharge is discriminatory in an action such as this, it is necessary, that the true, underlying reason for the discharge be established. That is, the fact that a lawful cause for discharge is available is no defense where the employee is *actually* discharged because of his Union activities. *A fortiori*, if the discharge is *actually* motivated by a lawful reason, the fact that the employee is engaged in Union activities at the time will not tie the employer's hands and prevent him from the exercise of his business judgment to discharge an employee for cause."[9] (Emphasis in original).

In essence, then, the task is to determine whether the reasons given by the Company for Hanke's discharge were the real reasons or a mere pretext. With direct evidence of motive or state of mind generally unavailable, it is rare that a trier of fact such as the Trial Examiner can make the necessary de-

4. National Labor Relations Act, as amended, Section 10(e), 29 U.S.C. § 160(e), note 1, supra. See Shattuck Denn Mining Corp. v. N.L.R.B., 362 F.2d 466, 467 (9th Cir., 1966).

5. Shattuck Denn Mining Corp. v. N.L.R.B., 362 F.2d 466, 469 (9th Cir., 1966).

6. N.L.R.B. v. Walton Mfg. Co., 369 U.S. 404, 407, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962).

7. 342 F.2d 841 (8th Cir., 1965).

8. Shattuck Denn Mining Corp. v. N.L.R.B., 362 F.2d 466, 470 (9th Cir., 1966), note 5, supra.

9. N.L.R.B. v. Ace Comb Co., 342 F.2d 841, 847 (8th Cir., 1965), note 7, supra.

termination on anything other than reasonable inferences drawn from the totality of facts, the conglomerate of activities, and the entire web of circumstances presented by the evidence on the record as a whole.

Here we have an election campaign conducted in an atmosphere of anti-union animus and activity which was of sufficient intensity to prevent a fair election. It was in this acidulous and acrimonious aura that Hanke, an employee with a fine record of achievement according to the Company's own standards, was discharged in a most unusual if not bizarre fashion.[10]

The Board, in adopting the Trial Examiner's findings, concluded that Hanke had been discriminatorily discharged since there was nothing in the nature of the misconduct that warranted such extraordinary action. Moreover, the significant departures from its well-established discharge procedures lend additional factual bases for the Board's conclusion that Hanke's minor fracas with Citrowski was not the motivating reason for his discharge. Contrary to the Company's policy, none of the supervisors had talked with Hanke prior to his discharge nor did the personnel office conduct an investigation of any sort to determine whether the accusations made against Hanke were accurate. Moreover, there is the finding that Cooper, who had never personally discharged an employee during his eleven years as manager of quality assurance, not only made the decision to discharge Hanke, but also assembled the evidence against him and led him through the termination procedures by personally accompanying him while he checked out his tools; by ceremoniously conducting him to the personnel office; and by ostentatiously escorting him to the plant gate—all unique undertakings which Cooper had never assayed in any other discharge case at the plant.

This unusual handling of Hanke's departure provides additional support for the Trial Examiner's finding that here was a highly irregular method of discharging an employee known to be one of the key union organizers.[11] Accordingly, we conclude that the inferences drawn by the Trial Examiner and adopted by the Board are by no means baseless. The Board's findings, that the Company's motives were not limited to a discharge for cause but flowed over into an actual discharge for union activities, are supported by substantial evidence on the record considered as a whole.

The petition to set aside the order is denied and the cross-application for enforcement is granted.

---

10. Hanke had worked for the Company for more than three years and was regarded as a very good employee. The rating reports from 1962 to 1965 refer to Hanke as "always pleasant," "very reliable," "continues to do an excellent job," and, as late as May 3, 1965, "Bob is doing a very good job, very satisfactory output." However, at the hearing, Cooper made no attempt to explain why he summarily dismissed an employee whom he regarded so highly.

11. During the election campaign, Cooper himself approached Hanke "as a member of the organizers, to see if he could exercise some control or restraint upon the other organizers or upon the organizing committee."