**GULF OIL CORPORATION, Petitioner,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, Respondent.**

No. 75–4400.

United States Court of Appeals, Fifth Circuit.

March 18, 1977.

---

Robert W. Ellis, Atlanta, Ga., for petitioner.

Thomas H. Ries, Atlanta, Ga., Robert E. Kopp, Richard A. Olderman, Rex E. Lee, Asst. Atty. Gen., Appellate Section, Civil Division, Dept. of Justice, Washington, D. C., for respondent.

Before GEWIN, GEE and FAY, Circuit Judges.

GEWIN, Circuit Judge:

Gulf Oil Corporation ("Gulf") seeks review of the determinations of an Environmental Protection Agency ("EPA") administrative law judge and regional administrator that its Gulf Lite Patio Torch Fuel ("Gulf Lite") is an unregistered economic poison under the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA").[1] As a result of these determinations Gulf was fined $5,400. We reverse.

FIFRA requires registration of all "economic poisons" sold in interstate commerce to ensure the safety and effectiveness of insecticides, fungicides, and herbicides. 7 U.S.C. § 135(a)(1). A substance or product that is an economic poison but cannot meet the registration requirements may not be sold in interstate commerce. The Act in part defines an economic poison as a substance or mixture "intended for preventing, destroying, repelling, or mitigating any insects, rodents, . . . weeds, and other forms of plant or animal life or viruses." *Id.* Pursuant to Congressional authority, the EPA administrator has promulgated regulations that define the term "economic poison" more specifically. One regulation provides that:

> A substance or mixture of substances is or is not an economic poison depending upon the purposes for which it is intended. Determination of intent in the marketing or distribution of these products is therefore of major importance. This determination will depend upon the facts in the particular case which tend to show the intended use of the product. In general, if a product is marketed in a manner that results in its being used as an economic poison, it is considered to be the intended result. Such intentions may be either expressed or implied. It is assumed that the distributor is aware of the purposes for which his product will be used. 40 C.F.R. § 162.101(b)(1).

The parties agree that in the instant case whether a product is an economic poison turns on what the product is held out to be.

---

1. 7 U.S.C. § 135 *et seq.* Congress amended FIFRA in 1972 by the Federal Environmental Pesticide Control Act ("FEPCA"), 7 U.S.C. § 136 *et seq.* The parties agree that the amended FIFRA applies to this case. The term "economic poison" was not carried over to the new Act, which uses the term "pesticide." Any distinction between the two terms is not significant here. Like the parties, we use the terms interchangeably.

The administrative proceedings here were based on two interstate shipments of Gulf Lite, one in 1972 and another in 1974, and the EPA's allegation [2] that Gulf Lite was shipped in violation of FIFRA because its label represented it to be an economic poison, yet it was not registered under the Act.[3] Gulf Lite was 99.9 percent petroleum distillates and 0.1 percent oil of citronella, and had a label containing four references to the latter. In the approximate center of the front and back panels, next to a drawing of a lighted patio torch, appear the words "CONTAINS OIL OF CITRONELLA." These words, which are colored white against a blue background, are spelled out in large and eye-catching script. The side panels of the container bear the logo "Gulf Lite Patio Torch Fuel." Below this, in smaller but conspicuous characters, is the phrase "with Citronella." On one of the side panels the words "Pleasant Odor" appear beneath the phrase "with Citronella."

The EPA's theory is that the unqualified references to oil of citronella on Gulf Lite containers constitute a pesticidal claim. The administrative law judge agreed, saying that "the record supports the conclusion that oil of citronella is recognized by the public or a large segment thereof as an insectifuge or insect repellant." The regional administrator upheld the administrative law judge, concluding that the "evidence clearly reflects that the labeling of the product clearly implies insect repellancy and was therefore an insecticide subject to the Act." The administrative law judge also concluded that Gulf subjectively intended the label to imply a pesticidal claim in order to compete with three other products.[4] Gulf contends that these findings are not supported by substantial evidence.[5] We agree.

■ Section 16 of FIFRA provides that "the order of the Administrator shall be sustained if it is supported by substantial evidence when considered on the record as a whole." 7 U.S.C. § 136n(b).[6] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Environmental Defense Fund, Inc. v. EPA*, 160 U.S.App. D.C. 123, 489 F.2d 1247, 1251 (1973). *See generally Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–91, 71 S.Ct. 456, 463–66, 95 L.Ed. 456, 467–69 (1951); *cf. NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829, 832 (1962).

---

2. EPA also alleged that Gulf Lite was misbranded in violation of the same Act. Gulf admits the truth of this allegation if Gulf Lite is an economic poison.

3. After the 1972 shipment EPA advised Gulf of its view that interstate shipments of Gulf Lite violated FIFRA. Gulf submitted an application for the product's registration, which EPA denied on the ground that Gulf failed to demonstrate the efficacy of its product as a pesticide. Counsel for EPA admitted at oral argument that the use of oil of citronella in Gulf Lite presented no question of possible environmental damage. Perhaps in such a case courts should subject to more careful scrutiny an administrative finding that a product makes a pesticidal claim, at least where such a claim only can be implied at best.

4. The labels of the three other products contained the following features during the 1970–72 period when Gulf entered the market:
   1. Contains oil of citronella; no further claims; not registered.
   2. Contains oil of citronella; kills pesky mosquitoes and other night flying insects; not registered.

3. 100% mineral spirits; aids in chasing mosquitoes and similar night flying insects; registered by United States Department of Agriculture.

5. Gulf also contends that EPA regulations specifically apply only to a product, not to a particular ingredient, that the classification of Gulf Lite as an economic poison is arbitrary and capricious, and that the penalty imposed is improper. In light of our disposition of the substantial evidence issue, we need not address these other contentions.

6. The standard of review in 7 U.S.C. § 136n(b) differs somewhat from the pre-FEPCA standard. The FEPCA version deals with sustaining administrative *orders*, whereas the pre-FEPCA version deals with sustaining administrative *findings of fact*. *See* 7 U.S.C. § 135b(d). The parties agree that the FEPCA version applies to this case, since it became effective "at the close of Oct. 21, 1972." Pub.L. 92–516 § 4(a), 86 Stat. 994, 1972 U.S.Code Cong. & Ad.News, p. 1169. Since the order in the instant case rests on the findings of fact, there is no difference between the standards here.

The EPA's case was based on the testimony of Herbert Harrison, Branch Chief of the Insecticide, Rodenticide Branch of the EPA Registration Division. Mr. Harrison testified that oil of citronella is widely recognized as an insecticide and is partially defined as such by the Merck Index and Webster's New World Dictionary. Mr. Harrison based his opinion as to the "wide recognition" of oil of citronella as an insecticide on the fact that prior to World War II it "was about the only insect repellant . . . on the market." He explained this statement by saying that because citronella proved inadequate in that war the military developed more efficacious repellants that are widely used today. In addition, Mr. Harrison based his opinion on the opinions of his associates and others with whom he had contact, most of whom were admitted to have backgrounds and training similar to his. He also opined that Gulf Lite would qualify as an economic poison because it was marketed in channels of trade where it would presumably be purchased as such, that is, "it would be sold to people who would be interested in repelling insects."

Two witnesses for Gulf testified that Gulf included oil of citronella in Gulf Lite principally because the torch fuels of two competitors contained the oil. One of the witnesses, Elisabeth Fareri, also testified that the primary use of citronella is as a perfume, and that while it had previously been regarded as an insecticide, its efficacy as such is very limited. While Ms. Fareri stated that oil of citronella was added to Gulf Lite for perfume purposes only, the odor would be noticeable only when the fuel was poured and not while it was burning.

This evidence does not constitute the substantial evidence required to uphold findings of an administrative agency. Although there arguably was some evidence that Gulf sought in part to ride the coattails of competitors who may have made express or implied pesticidal claims in connection with oil of citronella, that evidence itself cannot constitute substantial or even significant evidence where the torch fuel label used the bare words oil of citronella and no other words that could be construed as an express or implied pesticidal claim. Mr. Harrison's testimony fails to supply the needed evidence. Evidence that oil of citronella was widely recognized as a pesticide before World War II, over 35 years ago, does not permit the inference that it is still so recognized. Many, if not most, potential consumers of Gulf Lite had no meaningful pre-World War II experience. Moreover, because other products have eclipsed oil of citronella as effective pesticides since that war it is highly questionable whether those with pre-war experience continue to so identify oil of citronella. Indeed, there was substantial testimony from Mr. Harrison as well as from Gulf's witnesses that the oil is now widely used and recognized as a perfume.

The only evidence as to the current public perception is Mr. Harrison's testimony that Gulf Lite is marketed in a way that it would be purchased as an economic poison and that his associates regard oil of citronella as a pesticide.[7] However, Mr. Harrison admitted that his associates had backgrounds and training similar to his. The views of persons with extensive training in science and chemistry as to the character of a substance is merely slight evidence of the perceptions of potential consumers of torch fuel. Mr. Harrison's opinion as to marketing was based on the fact that torch fuel is purchased mainly in the summer, when consumers are also interested in insect repellants. Without proof of present public recognition of oil of citronella as a pesticide, Harrison's observation is equally applicable to the marketing of products such as air conditioners and lawn mowers and is therefore no evidence that the public would purchase Gulf Lite as an economic poison.

---

7. In light of Mr. Harrison's statement that his registration division realizes that oil of citronella is often used for perfume purposes and that the oil is not regarded as an efficacious pesticide, his testimony about the opinions of his associates and acquaintances must mean that these trained people recognize that oil of citronella has a very limited use as a pesticide or that they do not believe it at all efficacious but think there is some popular belief that it is.

In conclusion, at the administrative hearing *some evidence* was adduced from which one might infer that trained chemists or that certain persons who grew to adulthood 35 years ago think of oil of citronella for possible use as a pesticide. However, that does not constitute *substantial evidence* that "oil of citronella is recognized by the public or a large segment thereof as an insectifuge or insect repellant."[8] Consequently, the order of the regional administrator is REVERSED.

8. Counsel for the EPA has cited Federal Trade Commission cases, such as *FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965) and *Carter Products, Inc. v. FTC*, 323 F.2d 523 (5th Cir. 1963), for the proposition that an agency has great discretion to draw inferences. It is true that courts have allowed the FTC wide discretion to infer public deception from practices or statements ranging from simple lack of complete candor to misrepresentation. Those cases are not applicable here, where the question is whether an admittedly true statement constitutes a pesticidal claim.