Linda LINDSEY, Petitioner
and Appellee,

v.

MINNEHAHA COUNTY, South Dakota
and Marvin Noteboom, Register of
Deeds, Appellants.

No. 12299.

Supreme Court of South Dakota.

July 25, 1979.

Ina Anderberg Litke, Vermillion, for petitioner and appellee.

Gene Paul Kean, State's Atty., Minnehaha County, Sioux Falls, for appellants.

HOYT, Circuit Judge.

## CASE SUMMARY

The Division of Labor and Management Relations, South Dakota Department of Labor, after hearing, concluded that the Register of Deeds of Minnehaha County had violated SDCL 3–18–2, 3–18–3.1(1), (3), and (6) when he discharged a deputy in the title department on the pretext of a personality clash when in fact his motivation for discharge was his intent to interfere with public employee union activity authorized by SDCL 3–18.

The Division ordered the deputy reinstated with back pay mitigated by any interim earnings, with no loss of seniority and no reduction in wage level. The circuit court, on appeal under the Administrative Procedure Act, SDCL 1–26, affirmed. On this appeal from the circuit court judgment we reverse and uphold the termination.

## FACTUAL BACKGROUND

Linda Lindsey (Lindsey) was employed by Marvin Noteboom (Noteboom), the Minnehaha County Register of Deeds, from May, 1971, until her termination on July 15, 1976.

During the summer months of 1975 the South Dakota Employees Council, No. 59, American Federation of State, County and Municipal Employees (AFSCME) began an organizational campaign in Minnehaha County to unionize the employees at the Minnehaha County Courthouse. A formal petition for certification was filed in Sep-

tember, 1975. An election was held on December 15, 1975, in which the AFSCME won the right to represent the Courthouse employees. This election was set aside and a second election was held on February 17, 1976. AFSCME lost this second election.

In early June of 1976, Lindsey was asked to leave her employment by Noteboom on the basis that he could no longer work effectively with her because of a personality conflict. After Lindsey refused to terminate her employment upon Noteboom's request, Noteboom issued a formal written notice of termination in late June to become effective July 15, 1976.

On August 16, 1976, Lindsey filed a notice of an unfair labor practice complaint with the South Dakota Department of Labor, Division of Labor and Management Relations. After hearing, the Director of the Division entered a decision on December 15, 1976, holding that Lindsey's discharge constituted an unfair labor practice under SDCL 3–18–2, 3–18–3.1(1), (3) and (6). On appeal by Minnehaha County the circuit court affirmed, and the County appeals from the judgment of the circuit court.

## ISSUE

This appeal presents the issue of whether there is substantial evidence on the record made before the Division from which the hearing officer could reasonably conclude that Lindsey was discharged in violation of the Public Employee Union Law, SDCL 3–18–3.1.

## DECISION

The scope of judicial review in this appeal is defined by SDCL 1–26–36.[1]

1. SDCL 1–26–36 provides:
   The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

   (1) In violation of constitutional or statutory provisions;
   (2) In excess of the statutory authority of the agency;
   (3) Made upon unlawful procedure;
   (4) Affected by other error of law;
   (5) Unsupported by substantial evidence on the whole record; or
   (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Our review under the Administrative Procedure Act of the decision by the Director of the Division of Labor and Management must be the same as the review by the circuit court. The determination by this court whether the Director's decision can be sustained is to be unaided by a presumption that the circuit court decision is correct. *Piper v. Neighborhood Youth Corps*, 241 N.W.2d 868 (S.D.1976); *State v. Brosz*, 81 S.D. 64, 131 N.W.2d 69 (1964).

Professor Davis in his discussion concerning scope of review of administrative decisions referred to the case of *NLRB v. Brown*, 380 U.S. 278, 85 S.Ct. 980, 13 L.Ed.2d 839 (1965), where the Supreme Court reached the following conclusion:

It is argued, finally, that the Board's decision is within the area of its expert judgment and that, in setting it aside, the Court of Appeals exceeded the authorized scope of judicial review. This proposition rests upon our statement in Buffalo Linen that in reconciling the conflicting interests of labor and management the Board's determination is to be subjected to 'limited judicial review.' [citation omitted] When we use the phrase 'limited judicial review' we did not mean that the balance struck by the Board is immune from judicial examination and reversal in proper cases [footnote omitted] . . . Courts should be 'slow to overturn an administrative decision,' [citation omitted] but they are not left 'to "sheer acceptance" of the Board's conclusion,' [citation omitted]. Reviewing Courts are not obligated to stand aside and rubberstamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute. Such review is always properly within the judicial province, and Courts would abdicate their responsibility if they did not fully review such administrative decisions. Of course due deference is to be rendered to agency determinations of fact, so long as there is substantial evidence to be found in the record as a whole. But where, as here, the review is not of a question of fact, but of a judgment as to the proper balance to be struck between conflicting interests, '[t]he deference owed to an expert tribunal cannot be allowed to slip into a judicial inertia which results in the unauthorized assumption by an agency of major policy decisions properly made by congress.' [380 U.S. at 290–292, 85 S.Ct. at 987–988, 13 L.Ed.2d at 848–849.]

K. Davis, Administrative Law Text 526–27 (3rd ed. 1972).

SDCL 1–26–1(8) defines "substantial evidence" required by SDCL 1–26–36(5) as being "such relevant and competent evidence as a reasonable mind might accept as being sufficiently adequate to support a conclusion."

This is a codification of the definition of "substantial evidence" which we applied in *McKinnon v. State Banking Co.*, 78 S.D. 407, 103 N.W.2d 179 (1960). See also *Consolidated Edison Co. v. National Labor Relations Bd.*, 305 U.S. 197, 59 S.Ct. 206, 83 L.Ed. 126 (1938), and *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 86 S.Ct. 1018, 16 L.Ed.2d 131 (1966).

The import of the related phrase, "on the whole record," in SDCL 1–26–36(5) is explained in *City of Brookings v. Dept. of Environ. Prot.*, 274 N.W.2d 887 (S.D.1979), wherein we cited *Universal Camera Corp. v. National Labor Rel. Bd.*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). In interpreting the same wording in federal statutes, the United States Supreme Court said:

Whether or not it was ever permissible for courts to determine the substantiality of evidence . . . merely on the basis of evidence which in and of itself justified it, without taking into account contradictory evidence or evidence from which conflicting inferences could be drawn, the new legislation definitely precludes such a theory of review and bars its practice. The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. This is clearly the significance of the requirement . . . that courts consider the whole record.

340 U.S. at 487–488, 71 S.Ct. at 464–465, 95 L.Ed. at 467.

As we concluded in *City of Brookings,* supra, "[W]e may not displace the [Division's] choice between conflicting inferences or conclusions, both of which have support in the evidence. We may, however, reverse findings that are not fairly supported by evidence in the record, when the record is considered as a whole." 274 N.W.2d at 890.

■ We recognize the statutory right of the Minnehaha County Register of Deeds to remove deputies from his office at his pleasure. SDCL 7–7–21.[2] His right to discharge deputies in his office is limited, however, by our statute giving public employees the right to form and join labor or employee organizations. SDCL 3–18–2.[3]

In *General Drivers & Helpers Union v. Brown County,* 269 N.W.2d 795 (S.D.1978), we quoted with approval from *N.L.R.B. v. Ace Comb Company,* 342 F.2d 841, 847 (8th Cir. 1965), as follows:

It has long been established that for the purpose of determining whether or not a discharge is discriminatory in an action such as this, it is necessary that the true, underlying reason for the discharge be established. That is, the fact that a lawful cause for the discharge is available is

no defense where the employee is *actually* discharged because of his Union activities. A *fortiori,* if the discharge is *actually* motivated by a lawful reason, the fact that the employee is engaged in Union activities at the time will not tie the employer's hands and prevent him from the exercise of his business judgment to discharge an employee for cause.

■ The mere fact of discharge in and of itself warrants no inference that it was improperly motivated. *National Labor Relations Board v. McGahey,* 233 F.2d 406 (5th Cir. 1956).

■ In the *General Drivers & Helpers* decision, supra, we established the following guidelines for examining the question of employer motivation:

(1) Whether the employee had been criticized or specifically warned of his shortcomings;

(2) Whether the employee was given any advance notice of his discharge;

(3) Whether the employer offered economic benefits if the employee would refrain from union activity;

(4) Whether the employer was opposed to unionization;

(5) Whether the employee was competent;

2. SDCL 7–7–21 provides, in part:
The officer in whose office such deputies or clerks are employed shall have the sole power of appointing the same or removing them at pleasure, which appointment or removal shall be by a certificate in writing, and any deputy or clerk so appointed shall before entering upon the duties of his office, take and subscribe the oath or affirmation required by the Constitution, which oath or affirmation shall be endorsed on the certificate of appointment and filed as otherwise provided by law.

3. SDCL 3–18–2 provides:
Public employees shall have the right to form and join labor or employee organizations, and shall have the right not to form and join such organizations. Public employees shall have the right to designate representatives for the purpose of meeting and negotiating with the governmental agency or representatives designated by it with respect to grievance procedures and conditions of employment and after initial recognition by the employer, it shall be continuous until

questioned by the governmental agency, labor or employee organization, or employees, pursuant to § 3–18–5. It shall be unlawful to discharge or otherwise discriminate against an employee for the exercise of such rights, and the governmental agency or its designated representatives shall be required to meet and negotiate with the representatives of the employees at reasonable times in connection with such grievance procedures and conditions of employment. The negotiations by the governmental agency or its designated representatives and the employee organization or its designated representatives shall be conducted in good faith. Such obligation does not compel either party to agree to a proposal or require the making of a concession but shall require a statement of rationale for any position taken by either party in negotiations. It shall be unlawful for any person or group of persons, either directly or indirectly to intimidate or coerce any public employee to join, or refrain from joining, a labor or employee organization.

(6) Whether the employee was a known leader of the unionization drive and the employer knew of the employee's activity in the union at the time of discharge;

(7) Whether the discharge plan was promulgated with speed;

(8) Whether the employer gave an implausible explanation for its action;

(9) Whether the discharged employee was singled out for special treatment;

(10) Whether the reasons for discharge given at the hearing were the same as those given to the employee at the time of the discharge.

269 N.W.2d at 799.

Using these guidelines, we must determine whether the Division's conclusion in this case is supported by substantial evidence on the whole record.

The following analysis is an application of the relevant evidence in the record:

(1) The record indicates that in May or June of 1976, Lindsey was criticized and warned of her shortcomings. There was a disagreement between Lindsey and Noteboom concerning some seven titles and a $350,000.00 security interest from the National Bank of South Dakota.

(2) Lindsey was given advance notice of termination. In early June, Noteboom orally asked Lindsey to quit. Formal notice of termination was given on June 21, 1976, effective July 15, 1976.

(3) There is no evidence that Noteboom offered economic benefits to Lindsey if she would agree not to join the union.

(4) Although there was evidence that in October or November of 1975 Noteboom privately expressed his disapproval of unionization of county employees to some friends who were not involved in union activity, there is no evidence that Noteboom overtly opposed unionization. Both parties agree, and the record indicates, that Noteboom never threatened reprisals against any employee for union activity nor did he ever advise employees to join or not to join the union. His inquiries could be termed for informational purposes only.

(5) While there is evidence of a dispute between Noteboom and Lindsey concerning the recording of a lien on auto titles, there is no evidence that Lindsey was not competent.

(6) The record fails to establish that Lindsey could be termed a known leader of the unionization drive. The record indicates that Lindsey attended only two meetings, and there is no indication that she was a speaker, leader, or organizer at the meetings. Her participation in the union organization was no greater than that of anyone else in the office. If anything, she was only more vocal. Whether Noteboom was aware of Lindsey's attitude toward the union, other than her attending the meetings, is not shown.

(7) Lindsey's discharge was not promulgated with speed. The record indicates that early in June of 1976, Lindsey was asked to quit her job. Upon her refusal to resign, formal notice of termination was given on June 21, 1976, effective July 15, 1976, several months after the union meeting and elections.

(8) The employer did not give an implausible explanation for his action. It was agreed on appeal by both counsel that Noteboom discharged Lindsey in what he believed to be in accordance with SDCL 7-7-21 and SDCL 3-2-1. The reason stated in the written notice was "due to a personality clash that I feel is ample grounds for dismissal." The record indicates that Noteboom had discussed the personality conflict with Lindsey prior to her termination.

(9) There was no evidence that Lindsey was singled out for special treatment or that she was discriminated against in pay or promotion because of union activity. Lindsey continued to receive her authorized pay increases after the union elections. There was no evidence of any reprisal against her for her union activity.

(10) The personality clash between Noteboom and Lindsey was consistently given as the reason for termination of her employment. While greater specificity of the rea-

son for termination would be of assistance, there was evidence to indicate a deterioration in the relationship between the employer and the employee.

## CONCLUSION

We conclude that pursuant to the analysis above and our review of the record as a whole there was not substantial evidence from which reasonable findings could be made that Lindsey's union activity was the reason for her termination. The record contains innuendos and inferences which fall short of substantial evidence on the whole record necessary to provide a proper basis for the decision by the Division. As a result, we conclude that Lindsey has not established that her discharge was illegal.

The judgment is reversed and the case is remanded to the circuit court for further proceedings consistent with this opinion.

WOLLMAN, C. J., and MORGAN and FOSHEIM, JJ., concur.

HENDERSON, J., dissents.

HOYT, Circuit Judge, sitting for DUNN, J., disqualified.

HENDERSON, Justice (dissenting).

I dissent from the majority opinion. I would hold that there is substantial evidence on the record as a whole to support the Director's finding that appellant-Noteboom, Register of Deeds of Minnehaha County, discharged appellee-Linda Lindsey, in violation of SDCL 3–18–2 and 3–18–3.-1(1), (3), (6). Therefore, I would affirm the judgment of the circuit court.

Lindsey was employed by the Minnehaha County Register of Deeds' Office for more than five years without significant complaint regarding the quality of her work or her working relations. It was after Noteboom became aware of her union activities, Lindsey testified, that he started responding "coolly" towards her.

The reason given by Noteboom for Lindsey's discharge was that of a personality clash. This explanation, however, does not necessarily foreclose a finding that the pri-mary motivation behind Lindsey's termination of employment was her union-related activity.

It is difficult to ascertain a person's motives for a particular act. The Director's finding of anti-union motivation for Lindsey's discharge was based on inferences, but such matters in which the primary factual question involves intent are necessarily decided on inferences. This court has previously noted that:

> "It would indeed be the unusual case in which the link between the discharge and the union activity could be supplied exclusively by direct evidence. Intent is subjective and in many cases the discrimination can be proven only by the use of circumstantial evidence. Furthermore, in analyzing the evidence, circumstantial or direct, the Board is free to draw any reasonable inferences."

*General Drivers & Helpers U. v. Brown Cty.*, 269 N.W.2d 795, 799 (S.D.1978). I would hold that the inferences drawn by the Director in the instant case were reasonable in light of the testimony presented.

The majority opinion, following the guidelines established in *General Helpers,* supra, concluded that the innuendoes and inferences revealed throughout the record as a whole, fell short of substantial evidence necessary to provide a proper basis for the Director's finding. I disagree. We must be mindful of the fact that the scope of our review does not permit us to displace the Director's choice between conflicting inferences or conclusions, both of which have support in the evidence. *City of Brookings v. Dept. of Environ. Prot.*, 274 N.W.2d 887 (S.D.1979). The record contains ample evidence to fairly support the Director's finding.

One person testified that during a conversation prior to the first union election, Noteboom remarked that any of his employees who went to this union meeting did not have to come back. According to that individual, Noteboom's statement left him with the impression that reprisals might be taken against those employees who engaged in union activity. On a separate occasion,

another witness testified that Noteboom made the comment that it would not be in the best interest of his employees to attend the union organizational meetings. Furthermore, an employee in the register of deeds' office testified that she overheard a conversation between Noteboom and the Commission Chief in which Noteboom stated that he knew there were two girls for the union and that they were headed for trouble. Although neither of the two girls being discussed were mentioned by name, it was during this time that Lindsey was called into Noteboom's office after regular working hours and requested to leave. Shortly after that conversation, Mr. Noteboom informed the Commission Chairman that he had asked Lindsey to seek other employment.

Noteboom's statement, in conjunction with Lindsey's dismissal and other testimony, provide a basis from which the Director could reasonably conclude that "the record is replete with unrebutted indications that the Register strongly disapproved of the county employees being organized by the union and that he intended to keep his office staff free from union supporters."

The record reveals substantial evidence to support the Director's finding of fact that, among the employees of the register of deeds, Mrs. Lindsey was one of the strongest supporters of the union's attempts to win representation. Although the testimony of a fellow employee on this point did not portray Lindsey as one who delivered impassioned harangues about the advantages of the union membership, one cannot overlook the fact that there are more subtle ways to support a cause. It is noteworthy that on the day following the first union meeting, Noteboom particularly sought Lindsey out at work to question her about which employees attended the meeting and what had transpired there. This suggests that Noteboom viewed her participation in the union effort as something more than merely the action of an "interested employee."

The record also reflects that on other occasions Noteboom made comments to the effect that he could not see that the employees would benefit through unionization. The record also establishes that on the Friday before the second election, Noteboom called each employee back into his office to get their viewpoints on what the union could offer as well as what changes they would like to see implemented within the office. Although the evidence does not directly indicate that Noteboom offered the employees economic benefits if they agreed not to join the union, his conduct under this set of circumstances could be construed as an indirect offering of benefits, i. e., possible office changes that would alleviate the need for unionization. The majority opinion views these "oral questionnaires", administered on more than one occasion, only as innocent methods to gain information. I perceive these questionnaires as being designed to catalogue the number of union supporters within the register of deeds' office. Noteboom's overall conduct was clever, insidious and calculated to thwart the unionization effort. This activity clearly interfered with Lindsey's right as a public employee to join and form labor organizations and such inhibitory conduct is expressly prohibited by SDCL 3–18–3.1.

The majority opinion states that no evidence was presented to suggest that Lindsey was singled out for special treatment, yet Lindsey herself testified that she was not given the day off on her birthday, a customary practice in the office. Standing alone, this particular incident appears minor, yet the fact that her birthday was in early March, shortly after the second union election, lends credence to Lindsey's claim that she was discriminatively fired due to her union involvement.

The sole fact that Lindsey's discharge was not promulgated with speed is not determinative in this action. Noteboom was clever enough not to carry out his intentions until the whole matter of unionization was less visible. Furthermore, the notice to Lindsey expressing the reason for her dismissal as a personality clash does not necessarily foreclose a finding that it was premised upon anti-union sentiment. At no

time during this proceeding did Noteboom take the stand to rebut this highly damaging testimony.

We should not overlook the fact that the Director was in a unique position to judge not only the facts, but the credibility and demeanor of the witnesses, which the written record does not adequately convey. The Director is empowered to reject the employer's justification for the discharge on the basis of credibility alone. *NLRB v. Walton Mfg. Co.,* 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962). Although greater specificity regarding the facts and circumstances leading to Lindsey's termination would be of assistance, I cannot say that the testimony submitted to the director and to the court demands a reversal of the Director's decision. This court cannot substitute its own judgment for that of the Director as to the weight of the evidence on questions of fact. SDCL 1–26–36. Even though this court might have justifiably decided the case differently had the matter been before it *de novo,* this court may not reverse findings that are fairly supported by evidence when the record is considered as a whole. *City of Brookings v. Dept. of Environ. Prot.,* supra. There is ample evidence in the record as a whole to support the Director's finding of anti-union motivation for Lindsey's termination of employment. Therefore, the judgment of the circuit court should be affirmed.