**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**GULF STATES UNITED TELEPHONE COMPANY, Respondent.**

No. 81–4095.

United States Court of Appeals, Fifth Circuit.

Dec. 20, 1982.

Elliott Moore, Deputy Associate Gen. Counsel, Mendelssohn V. McLean, N.L.R.B., Washington, D.C., for petitioner.

Durwood Crawford, Steve Kardell, Jr., Dallas, Tex., for respondent.

Before WISDOM, POLITZ and TATE, Circuit Judges.

POLITZ, Circuit Judge:

The National Labor Relations Board petitions for enforcement of an order issued to Gulf States United Telephone Company. In resisting the order, Gulf States posits two issues for review: (1) whether the Administrative Law Judge erred in admitting identification evidence; and (2) whether the ALJ's findings, as adopted by the Board, are supported by substantial evidence. Upon a close examination of the record, guided by the rubric announced in *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 491, 71 S.Ct. 456, 466, 95 L.Ed. 456 (1951), "whether on the record as a whole there is substantial evidence to support" the agency's factual findings, and mindful that this evaluation of the evidence "is a question which Congress has placed in the keeping of the Courts of Appeals," *id.,* we find the evidence sufficient and grant enforcement.

### Facts

Gulf States provides telephone services to numerous Texas communities. This controversy involves the Kaufman office within the Athens District. Gene King managed the Kaufman operation, assisted by R.L. Mooneyham, supervisor of the installation and repair unit consisting of four employees.

Arthur Roberts was hired on September 22, 1978, and began a 90-day probationary period[1] under Mooneyham's supervision. After a minimum amount of on-the-job training,[2] Roberts was assigned a vehicle and began solo work. Concerned about his performance, Roberts inquired of his superi-

---

1. Employees were routinely hired for a 90-day probationary period during which Gulf States was at liberty to terminate for any reason it deemed adequate. Probationary employees did not have the advantage of the grievance and arbitration procedures established by Gulf States and the employees' bargaining agent, Local 1506, International Brotherhood of Electrical Workers, AFL–CIO–CLC. Upon satisfactory completion of probation, employees automatically acceded to all benefits of the collective bargaining agreement.

2. Roberts trained under David Shed, an independent contractor with extensive experience in telephone work, including the training of new employees. Shed had worked for several companies and his methods differed from other Gulf States' employees. Being aware of this, Roberts requested further training; none was offered.

ors and was usually reassured but was sometimes cautioned.[3]

The bargaining agreement between Gulf States and the union expired on November 30, 1978, but work continued thereafter on a day-to-day basis. In early December, Roberts joined the union. Mooneyham informed Roberts that he could continue working should a strike be called, that work assignments would be made available in a manner that would not require the crossing of a picket line. Most, if not all employees, were offered this option. When the union called a strike on December 18, 1978, Roberts joined those who declined to work.[4] On the last day of his probationary period, while out on strike, Roberts was fired by King, who cited poor job performance as the reason for his action.

The strike ended in February of 1979. Under the settlement agreement, Roberts was re-employed on a probationary basis. About five weeks after Roberts was re-employed, Gulf States received a service report postcard critical of a repairman. The card came from Mrs. Harold Bowen, a customer, who wrote that the repairman complained about wages and indicated dissatisfaction with the strike results. King ordered an investigation and Mooneyham interviewed Mrs. Bowen, who advised that she had not personally heard the reported statements but had written the postcard at her husband's request. Mr. Bowen was not interviewed. In response to questions, Mrs. Bowen gave the approximate date of the repairs, noted that the work was done on their back porch, and described the repairman as being dark-haired and of medium height. This description fit Roberts and at least two other employees.

Mooneyham examined Gulf States' service records which reflected that Roberts, and others, had made calls to the Bowen home to work on a back porch connection during the time period involved. Notwithstanding, Mooneyham concluded that Roberts was the employee who had made the critical statements. King and Mooneyham then inspected other jobs performed by Roberts. On March 21, 1979, King discharged Roberts, informing him that the consistency and quality of his work was unacceptable. Roberts either denied any mistakes or insisted that any shortcomings resulted from insufficient training or his employer's failure to furnish necessary equipment.

### Identification Evidence

At the hearing, the ALJ asked Mr. Bowen if he could select Roberts from a group of spectators in the courtroom. Gulf States objected, claiming a proper foundation had not been laid; specifically, that there was no evidence of Roberts' physical appearance in March 1979, as contrasted with his appearance and dress at the time of the hearing. The objection was overruled. Mr. Bowen could not identify Roberts, either while seated among the spectators or while standing alone. Roberts later testified that his hair might have been an inch longer in March, and although clean-shaven at the hearing, he said he might have had a mustache in March. He also spoke to his usual mode of dress at work. Gulf States contends on appeal that the identification evidence, more precisely the evidence of failure of identification, was improperly admitted, again challenging the evidentiary foundation and the change in appearance.

---

3. Roberts testified that when he questioned Mooneyham about his work, on some occasions he was told his work was satisfactory and on other occasions told about mistakes he had made. Roberts also testified that King told him "on some instances your jobs look like a beginner. On some they look like you've worked for the company for twenty-five years." On one occasion Mooneyham told another supervisor that Roberts was one of his best men.

4. The ALJ found:
   When the strike occurred, Respondent had 850 employees, of whom about 600 were in the bargaining unit. Of these, approximately 350 joined the strike. Forty employees were on probation, six went on strike. Roberts was the only one fired. In Roberts' immediate work group, under King's supervision, there were 23 employees. Roberts was the only one on probation and the only one fired.

We examine this assignment of error mindful that an ALJ should adhere to the rules of evidence but need not do so slavishly; the rule of practicality should appertain. *Helena Laboratories Corp. v. NLRB*, 557 F.2d 1183 (5th Cir.1977) (*citing Sardis Luggage Co. v. NLRB*, 234 F.2d 190, 192 (5th Cir.1956)). The admissibility of identification evidence lies within the sound discretion of the trial judge. *Meadows & Walker Drilling Co. v. Phillips Petroleum Co.*, 417 F.2d 378 (5th Cir.1969). The ALJ had discretion to permit or reject the identification testimony. He was aware of sufficient qualifying data, particularly the differences in physical appearance and dress. Gulf States' objection bore more on the weight than the admissibility of the evidence in the context of the ALJ hearing. We discern no abuse of discretion in the admission of this evidence.

### Substantial Evidence on the Record as a Whole

The critical question presented today is whether the findings and conclusions of the ALJ, adopted by the Board, are supported by substantial evidence when one views the record in its entirety. The scope of our review is limited, and we may deny enforcement of an order of the Board only " 'if, after full review of the record, we are unable conscientiously to conclude that the evidence supporting the Board's decision is substantial.' " *Berry Schools v. NLRB*, 653 F.2d 966, 969 (5th Cir.1981) (*quoting NLRB v. Mueller Brass Co.*, 509 F.2d 704, 706–07 (5th Cir.1975)). In this regard we noted recently in *Dow Chem. Co., Texas Div. v. NLRB*, 660 F.2d 637, 643 (5th Cir.1981): "When the board's findings are reasonable and supported by substantial evidence, a court will affirm them, though the court might well have made contrary findings if sitting *de novo*."

■ In the case at bar, the ALJ concluded that "only when Roberts went out on strike was it necessary to fire him for the first time." This is a reference to the December 1978 dismissal. Concerning this dismissal, the ALJ further stated: "The sum-mary discharge ... while he was on strike, without warnings, is some evidence that his discharge was for unlawful reasons .... That is, the record shows that Roberts would not have been fired if he had worked through the strike." The ALJ and Board may rely on circumstantial evidence in drawing reasonable inferences about anti-union animus motivating employment decisions. *See NLRB v. Proler Internat'l Corp.*, 635 F.2d 351 (5th Cir.1981); *Texas Aluminum Co., Inc. v. NLRB*, 435 F.2d 917 (5th Cir.1970).

■ Illegal motive for an employment decision is not to be lightly inferred. *See NLRB v. Southern Plasma Corp.*, 626 F.2d 1287 (5th Cir.1980); *NLRB v. Auto Warehousers, Inc.*, 571 F.2d 860 (5th Cir.1978); *NLRB v. McCready & Sons, Inc.*, 482 F.2d 872 (6th Cir.1973). To support the administrative finding of an unlawful termination, the evidence in the record must establish a "reasonable inference of causal connection between the employer's anti-union motivation and the employee's discharge." *NLRB v. O.A. Fuller Super Markets, Inc.*, 374 F.2d 197, 200 (5th Cir.1967). *See Central Freight Lines, Inc. v. NLRB*, 624 F.2d 1301 (5th Cir.1980).

Like every finding of fact, the conclusion that an employer's conduct was motivated by anti-union animus is accepted and given credence only if supported by substantial evidence on the record as à whole. *Universal Camera Corp. v. NLRB; NLRB v. Walton Mfg. Co.*, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962). *See Pioneer Natural Gas Co. v. NLRB*, 662 F.2d 408 (5th Cir. 1981); *Delco-Remy Div., General Motors Corp. v. NLRB*, 596 F.2d 1295 (5th Cir.1979). Following this guidon, we examine the ALJ's finding, which the Board adopted, that:

The events after reinstatement ... weigh even stronger in support of General Counsel's theory. First, the alleged trigger of the investigation, the Bowen incident ..., is in reality, no evidence of poor work nor of wrongdoing by Roberts. The method of investigation here shows King and Mooneyham were absolutely in-

tent on fabricating a case against Roberts.

 The record reflects that Roberts actively participated in protected strike activity; that he was the only probationary employee under King and Mooneyham who could be discharged during the strike without more severe union contract consequences; that he was discharged both times without any prior warnings or cautions about the quality of his work; that upon rehire after the strike, although ostensibly earlier discharged for inadequate work performance, he received no additional training or supervision; that he was discharged about five weeks after his rehiring based on a complaint in which the discharging supervisor never spoke to the complaining customer or to Roberts; and that the customer could not identify Roberts.

Gulf States concedes that given the type of scrutiny Roberts was subjected to after the Bowen incident, some errors in work would likely be found. Viewing the record as a whole, we find substantial evidence supportive of the ALJ's findings and inconsistent with Gulf States' claim that Roberts was fired because of shoddy work.

Gulf States' challenge is effectively a disagreement with certain credibility determinations made by the ALJ. We find evidence both ways, but we cannot say that the ALJ's credibility choices are not supported by substantial evidence. Where credibility is involved we must pay special deference to the Administrative Law Judge's conclusion. *NLRB v. Southern Plasma Corp.,* 626 F.2d 1287 (5th Cir.1980). The decision by the ALJ is sufficiently supported.

The application for enforcement is GRANTED.