988 F.2d 120
 148 L.R.R.M. (BNA) 2320
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
FARMER BROTHERS CO., Respondent.
 No. 91-70530.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1993.
Decided Feb. 26, 1993.
 
 On Application to Enforce the Order of the National Labor Relations Board, No. 31-CA-17677.
 NLRB
 AFFIRMED.
 Before BEEZER, BRUNETTI and DAVID R. THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The National Labor Relations Board (the "Board") petitions for enforcement of its order finding that Farmer Brothers Co.'s (the "Company") interrogation of employee James Stayton-McGriff ("McGriff") about his former union involvement, termination of McGriff because he engaged in protected concerted activities both through the Food, Industrial and Beverage Warehouse Drivers and Clerical Employees Union, Teamsters Local 630 (the "Union") and directly, and other acts of interference violated Sections 8(a)(1) and 8(a)(3) (29 U.S.C. §§ 158(a)(1) and (a)(3) (1992)) of the National Labor Relations Act (the "Act"). The Board ordered the Company to cease and desist from interfering in employees' exercise of their rights under the Act and to place McGriff at the top of the permanent hire list with back pay. The Company contends that the Administrative Law Judge's ("ALJ") credibility determinations, which were adopted by the Board, were erroneous, and that even if the determinations were correct the Company did not violate the provisions of the Act. The Company also challenges the Board's remedy as punitive and contends that, if anything, McGriff should be returned to his former position as a casual driver. We affirm the Board's decision in all respects.
 
 
 3
 * An ALJ's determinations on credibility which have been adopted by the Board are upheld unless the " 'clear preponderance of all the relevant evidence convinces that they are incorrect.' " Did Building Services, Inc. v. N.L.R.B., 915 F.2d 490, 494 (9th Cir.1990) (quoting N.L.R.B. v. Luisi Truck Lines, 384 F.2d 842, 846 (9th Cir.1967)). The Board's affirmance of an ALJ's findings on credibility will not be overturned unless they are " 'inherently incredible or patently unreasonable.' " N.L.R.B. v. Hospital & Institutional Workers Union, 577 F.2d 649, 652 (9th Cir.1978) (quoting N.L.R.B. v. Anthony Co., 557 F.2d 692, 695 (9th Cir.1977)).
 
 
 4
 The Company contends the ALJ himself found McGriff's testimony to be "inherently incredible," and erred in giving the testimony any credence. The ALJ did note McGriff "was the type of witness who, in attempting to establish his credibility, achieves the opposite effect," and he "found utterly appalling [McGriff's] attribution of stereotypical racist language to [business agent] Willie Lykes ... and racist comments to [Company managers] Stiff and Andrade." The ALJ also expressed his "utter lack of confidence in the truth" of McGriff's testimony.
 
 
 5
 Although the ALJ found there were "areas" where "McGriff was not candid," he did not find McGriff to be "inherently incredible." The ALJ's carefully written opinion indicates that he did not disbelieve everything that McGriff said. He stressed "that witnesses sometimes relate an amalgam of truth and falsehood and that, in said circumstances, it is not unusual--and, indeed, common--for a trier of fact to believe some, but not all, of a witness's testimony."
 
 
 6
 The ALJ's reaction to the testimony of Company officials Stiff (traffic manager), Allen (distribution manager), and Berger (vice president) was also one of "utter lack of confidence." He found these men were "utterly disingenuous witnesses whose main purpose ... appeared to be to buttress [the Company's] position during the trial and not to be truthful." He described Allen particularly as "mendacious."
 
 
 7
 The ALJ wrote that his determinations were "based upon the record as a whole, concentrating upon factors such as conflicts with more credible witnesses and supposedly corroborative ones, the types of questions asked and answered, and upon the reasonable nature of the testimony." The Company charges that "throughout the entire transcript there is only one instance in which the ALJ used true corroborative testimony from a credible witness to resolve" a credibility conflict. That is false. For example, Berger denied that he had ever asked about union participation in an interview, because he would not ask that kind of question. Wallace, another casual driver, testified that Berger had asked him about his participation in the Union, corroborating McGriff's statement that he had been asked about the Union. Galvin, another casual driver, corroborated McGriff's testimony that Farmer (Company president), too, asked about participation in the Union. McGriff's attorney Nelson corroborated McGriff's testimony that he was terminated because he had gone to the Union. Nelson stated both Allen and Berger had telephoned him and told him that the Company would rather "shut down" than give in to Union pressure, and that McGriff would not be hired as a permanent driver regardless of any contract rights.
 
 
 8
 On another occasion details in McGriff's testimony which were confirmed by Stiff lent credence to McGriff's testimony. McGriff said Stiff reviewed his (McGriff's) evaluations with him and told him that he had "passed," which Stiff denied. McGriff said that one of the evaluation sheets, which was subsequently filled out, was blank at the time, and that another one had not been edited when he saw it. Stiff confirmed that one trucker initially turned in a blank form, and that he had altered the other evaluation after it was received on behalf of the evaluator.
 
 
 9
 Other deductions were possible because the Company's employees contradicted themselves or each other. For example, Berger said that he always interviewed new employees with Farmer, in Berger's office, but then admitted that he sometimes used the empty room behind Allen's office (the room McGriff said he was interviewed in by Berger) to interview people alone. The testimony that McGriff was dismissed on the basis of poor evaluations was belied by the fact that McGriff's evaluations met Company policy requirements, and that nobody had ever failed the evaluation process before. Allen and Stiff gave conflicting testimony as to whether they had ever examined McGriff's evaluations together. Stiff related that the Company did not need so many casual drivers since business was slow; however, a slow business period would not affect a casual driver's status, as the Company had no duty to give them any work.
 
 
 10
 Besides, some of the violations were not based on McGriff's own testimony. Allen admitted he had told McGriff about a layoff of warehouse employees during which other employees were forced to work overtime. Allen could not explain why other workers would have to work overtime if the layoff was mandated by economic concerns, not reprisal for Union grievances as McGriff had testified. Allen also mentioned that an independent contractor had lower labor costs and that the Company considered contracting out to them. Yet another violation was based in part on Allen and Berger's comments to Nelson.
 
 
 11
 The ALJ sometimes chose to believe McGriff when McGriff's testimony was in direct conflict with a Company official's testimony. The decision to believe McGriff in certain circumstances was not unreasonable but was "[b]ased upon what [the ALJ perceived] as fabricated testimony by [the Company's] managers regarding the timing and sequence of McGriff's employment interviews" and the fact that the managers' testimony was "controverted" by credible witnesses on key matters. On several occasions when McGriff's testimony was contradicted by testimony of witnesses whom the ALJ found credible, the ALJ did not credit McGriff.
 
 
 12
 We hold the clear preponderance of the relevant evidence supports the ALJ's findings on credibility.
 
 II
 
 13
 The Company also contests the ALJ's determination that the Company's actions violated the Act. A violation must be established by the preponderance of the substantial evidence. 29 U.S.C. § 160(c) (1992). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept to support a conclusion." N.L.R.B. v. O'Neill, 965 F.2d 1522, 1526 (9th Cir.1992) (citation omitted). This court "defer[s] to the Board's reasonable interpretation and application of the Act." Did Building Services, 915 F.2d at 494.
 
 
 14
 The ALJ held that the Company violated § 8(a)(1) by interrogating McGriff about his Union sympathies. An interrogation does not violate the Act unless, "under the circumstances, it reasonably tends to restrain or interfere with employee union activity." N.L.R.B. v. Brooks Cameras, Inc., 691 F.2d 912, 919 (9th Cir.1982). Relevant factors include the background, the nature of the information sought, the identity of the questioner, and the place and method of interrogation. Rossmore House, 269 N.L.R.B. 1176, 1178 n. 20 (1984), enforced, 760 F.2d 1006 (9th Cir.1985). Applying these factors, we conclude the ALJ's determination that the interrogation was coercive was proper. The interrogation about union membership was done by the highest ranking Company officials; the interrogation seems to have been designed to screen out strong union adherents; and the officials' other comments indicate there was an environment of hostility toward the Union.
 
 
 15
 The ALJ concluded that the Company violated the Act by informing employees that problems could be resolved without resort to the Union or grievance process. While an employer is permitted (even encouraged) to establish an open-door policy, the employer cannot discourage employees from taking advantage of the Union or the grievance process. Prince Trucking Co., 283 N.L.R.B. 806 (1987). Here Allen's statement that "most problems could be settled right in the office without going downtown," read in the context of the other anti-Union statements and particularly the recent history of conflict with the Union office "downtown," was reasonably interpreted by the ALJ to inhibit resort to the Union to air grievances.
 
 
 16
 None of the Company's remaining challenges to the findings of violations have merit. Some of those challenges were not based on the legal basis of the violations but solely on repetition of the attacks on the ALJ's credibility findings. As we uphold those credibility findings, we see no reason to disturb the ALJ's legal conclusions. The legal basis of the other violations were not challenged in respondent's brief.
 
 III
 
 17
 The Company asserts that McGriff's termination was lawful because McGriff did not have an honest and reasonable belief that he had a contractual right to be placed on the permanent hire list. The Company relies on N.L.R.B. v. City Disposal Systems, Inc., 465 U.S. 822 (1984), for the proposition that an employee is not engaging in "concerted activity" within the meaning of 29 U.S.C. § 157 (1992) unless the employee has an "honest and reasonable" belief that he has a valid contractual right. City Disposal, 465 U.S. at 840. An employee's assertion of his rights need not turn out to be correct as long as it is honest and reasonable. Id.
 
 
 18
 McGriff's belief that he had fulfilled the requirements to be placed on the permanent hire list was based on the trip sheets, which mistakenly showed that he had completed 40 tours, and his ignorance of the side agreement under which the Union agreed that only extra tours would count toward the 40 tours. The Company states that McGriff did not have an "honest and reasonable belief" in the validity of his contractual right because he learned of the side agreement before seeking to vindicate his rights.
 
 
 19
 McGriff did know about the side agreement by the time he had his lawyer draw up the letter to the Company, but intended to estop the Company from relying on it based on the mistaken trip sheets. The ALJ recognized that "whether [McGriff] was correct or incorrect in light of the [side agreement] McGriff's contention was based upon the trip sheets which credited him with in excess of 40 tours of duty toward hiring." The ALJ did not err in concluding that McGriff's effort to estop the Company was "honest and reasonable."
 
 IV
 
 20
 The Company protests that its decision to terminate McGriff was lawful because it was unrelated to his efforts to force himself onto the board. Initially, "the General Counsel bears the burden of proving that the employee's exercise of a protected activity was a motivating factor in the termination," and then the burden shifts to the employer to "show by a preponderance of the evidence that it would have terminated the employee despite the protected activity." Dash v. N.L.R.B., 793 F.2d 1062, 1066 (9th Cir.1986).
 
 
 21
 According to the Company, the decision to terminate McGriff was based on three factors. First, McGriff pestered Stiff about the letter of intent. As the ALJ observed, McGriff's pestering of Stiff is part of McGriff's exercise of his rights. McGriff cannot be terminated for asserting rights he honestly and reasonably believed he had. This reason is not independent of McGriff's dispute with the Company.
 
 
 22
 Second, there was not enough work for all the casual employees since business was slow, and the Company chose to terminate McGriff because his evaluations were the lowest. The ALJ logically discounted this argument. The Company had no obligation to give the casual drivers any work. In fact, they went without work for substantial periods (e.g. casual driver Stout worked only five local runs from 4/1-6/8; Wallace worked only one local run from 3/31-5/13). As noted above, McGriff testified in detail that Stiff had gone over his evaluations with him and told him that he had "passed," and details in his testimony were corroborated by Stiff. McGriff's evaluations were generally favorable, and were certainly not grounds for dismissal under the Company's own policy (which required only that an employee receive "favorable" scores on three of five evaluations).
 
 
 23
 Third, McGriff was not compatible with the other employees. The Company managers did not cite any specific comments about McGriff but rather relied on vague remarks that coworkers disliked him. The timing of McGriff's discharge, as his attempts to exercise his rights were beginning to annoy Company officials, supports the ALJ's conclusion that the discharge was not based on incompatibility, and buttresses the ALJ's decision to credit McGriff's allegations (reaffirmed by Nelson) that the discharge was in response to McGriff's resort to the Union and to legal remedies. See Seaboard Farms of Athens, Inc., 292 N.L.R.B. 776 (1989); Asociacion Hospital Del Maestro, Inc., 291 N.L.R.B. 198 (1988). The fact that McGriff's evaluations, completed by fellow truckers, were all good or excellent (with the exception of one trucker who objected to McGriff's smoking) also contradicts the Company's claim of incompatibility.
 
 V
 
 24
 The Company contends that McGriff should only be reinstated as a casual driver, not be put at the top of the permanent hire list. This court defers to the Board's judgment in crafting a remedy because of the Board's superior expertise in the area of labor law. N.L.R.B. v. Gissel Packing Co., 395 U.S. 575, 612 n. 32 (1969). The Board's "choice of remedy must ... be given special respect by reviewing courts." Id. Accord Sure-Tan, Inc. v. N.L.R.B., 467 U.S. 883, 898-899 (1984).
 
 
 25
 The purpose of the remedy is to return a discharged employee to the position he would have been in had he not suffered discrimination. N.L.R.B. v. Rutter-Rex Manufacturing Co., 396 U.S. 258, 265 (1969). Though the Company opines that McGriff should be returned to the casual employee corps, this remedy is not satisfactory to restore McGriff to his rightful place.
 
 
 26
 It is within the Board's remedial powers to order a probationary employee to be reinstated as a permanent employee. Gulf States United Telephone Co., 253 N.L.R.B. 603, 603 n. 2 (1980), enforced, 694 F.2d 92 (5th Cir.1982). Any uncertainty about the employee's projected status should be resolved against the "wrongdoer" employer. Id. McGriff's cohort of casual drivers are now permanent drivers, and the ALJ realistically concluded that McGriff would have attained the same position given the same opportunity. Id. Reinstatement as a casual driver would not be completely effective, given that the Company would have no contractual obligation to give him work and he might suffer because of his role in this litigation. The ALJ found that McGriff would have made the necessary number of tours by this time and that he had already passed the evaluation process, a conclusion which was supported in his opinion. Id. This remedy is appropriate.
 
 
 27
 We will enforce the order. The Board's decision is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3