**DILLINGHAM MARINE AND MANUFACTURING COMPANY, FABRIVALVE DIVISION, Petitioner Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent Cross-Petitioner.**

**No. 79–1029.**

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1980.

Threadgill & Smith, Taylor B. Smith, Columbus, Miss., for petitioner cross-respondent.

Elliott Moore, Deputy Associate Gen. Counsel, Edward S. Dorsey, Atty. N. L. R. B., Washington, D. C., for respondent cross-petitioner.

Before AINSWORTH, VANCE and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, Circuit Judge:

This case comes before us for review of the Decision and Order of the National Labor Relations Board issued on December 19, 1978, in which the Board found that petitioner Dillingham Marine and Manufacturing Company had committed violations of Section 8(a)(1) and Section 8(a)(3) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1) and § 158(a)(3) (1976).

The most serious violation found by the Board was the discriminatory layoff of 15 employees at petitioner's Amory, Mississippi, plant, in violation of Section 8(a)(1) and Section 8(a)(3). The union activities began with a meeting on April 7, 1977, and the plant manager, Harrison, was immediately aware of the situation and concerned. Harrison held meetings with employees on April 8, 11, and 13, 1977, at which he made several statements which the Board found to be threatening and coercive activity in violation of Section 8(a)(1). Among other such statements, Harrison said that he knew which employees had attended union meetings, and that he knew who the ringleader of the union was, and he couldn't touch him although he would like to fire him. On April 15, 1977, Harrison announced the layoff. On the day after the layoff, Harrison told employee Powell that the union was the biggest cause of the layoff, and that Fussell was the main union leader and that his job had been eliminated. The layoffs were apparently consistent with petitioner's seniority system; however, Harrison personally made the decision to eliminate the job held by Fussell.

Petitioner argues that the layoff was motivated by business reasons, primarily because of excessive inventory, and that the layoff decision was made by the company's vice president in Portland, Oregon, before he knew of the serious union activity.

The Board found petitioner's business reasons unconvincing because there had been repeated assurances that a layoff would not occur, because sales and profit figures were good and improving (Harrison had advised employees immediately before the union activity began that the March sales were on target and there would be no layoffs), because inventory levels were in fact below their previous levels, because a strike at another of petitioner's plants was already resulting in a reduction of this plant's inventory, and because unusual overtime was performed immediately after the layoff. Taking into consideration the demeanor of the witnesses, certain contradictory testimony, and the fact that knowledge of the union activities was available to (and actually transmitted to) the decision maker, through Harrison, the Board did not credit the company's testimony suggesting

that the layoff decision was made without knowledge of the union organizational activities.

Based on the timing of the layoff, the Harrison statement directly attributing the cause of the layoff to the union organizational activities, and the unconvincing nature of petitioner's asserted business justifications, the Board found that the layoffs were motivated, not by business reasons, but by the union organizational activities. On review of the record as a whole, we are satisfied that there is substantial evidence to support the Board's findings. *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Petitioner urges that a violation cannot be found unless it is shown that petitioner had knowledge of union activities on the part of each discharged employee, citing *NLRB v. Walton Manufacturing Co.,* 286 F.2d 16 (5th Cir. 1961), *rev'd on other grounds,* 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962), and *NLRB v. Computed Time Corp.,* 587 F.2d 790 (5th Cir. 1979). However, such a showing is not necessary here, where the Board found that the layoff decision itself was motivated by the union organizational activity. This finding necessarily constitutes a finding that each individual discharge was caused by the union activity, and the instant case is thus consistent with the cited cases. Numerous cases have found Section 8(a)(3) violations when the decision to discharge employees was illegally motivated, even though some "innocent" employees were also discharged. *Merchants Truck Line, Inc. v. NLRB,* 577 F.2d 1011 (5th Cir. 1978); *Majestic Molded Products, Inc. v. NLRB,* 330 F.2d 603 (2nd Cir. 1964); *NLRB v. Tesoro Petroleum Corp.,* 431 F.2d 95 (9th Cir. 1970); *M.S.P. Industries, Inc. v. NLRB,* 568 F.2d 166 (10th Cir. 1977). *See also NLRB v. Treasure Lake, Inc.,* 453 F.2d 202 (3rd Cir. 1971). Other cases in this Circuit have approved this approach in dictum. *NLRB v. Computed Time Corp.,* 587 F.2d 790 (5th Cir. 1979); *Skyline Homes, Inc. v. NLRB,* 323 F.2d 642 (5th Cir. 1963). The same rationale has been applied by this Court in finding a Section 8(a)(3) violation where a company's motivation in withholding a Christmas bonus was to discourage union membership and to retaliate against the majority vote for a union, even though both pro-union and anti-union employees lost the bonus. *NLRB v. Zelrich Company,* 344 F.2d 1011 (5th Cir. 1965). *See also Allied Industrial Workers, Local 289 v. NLRB,* 155 U.S.App. D.C. 112, 476 F.2d 868 (D.C. Cir. 1973), where a Section 8(a)(3) violation was found where a company, for anti-union reasons, withheld vacation benefits from all employees.

The result we reach in this case is required by the clear mandate of the statute: Section 8(a)(3) prohibits the discharge of an employee (a paraphrase of the statutory language: "discrimination in regard to . . . tenure of employment") to discourage membership in a labor union, which is precisely what the Board found to have occurred in the instant case. Common sense dictates that when employees are discharged for individual reasons, then the employer's knowledge of each employee's union activity and the employer's motivation for each discharge are the relevant inquiries; but when an employer makes a single decision to fire 15 people to "discourage membership in any labor organization," then the relevant inquiry is the employer's motivation for that single decision.

In the instant case, there was evidence that a majority of the 15 employees laid off had actually signed union cards. There was evidence that the plant manager, Harrison, knew which employees were active in the union organizational efforts, that Harrison had expressed a belief that he knew who the ringleader was and would like to fire him, and that Harrison stated the day after the lay off that Fussell (the only employee whose job was personally selected for elimination by Harrison) was the main leader and that his job had been eliminated. There was also the unusual admission by Harrison that the union was the cause of the lay off, and his lament that "innocent" employees would also be laid off. We conclude that there is sufficient evidence on

the record as a whole to support the finding of the Board that the lay off was caused by the union organizational activity, and thus violated Sections 8(a)(1) and (3).

We have also carefully examined the record with respect to the other violations found by the Board, and we are satisfied that there is substantial evidence on the record as a whole to support its findings. The decision and order of the Board is, accordingly,

ENFORCED.