**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 24-1973**

_____

GARTEN TRUCKING LC,

Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent.

ASSOCIATION OF WESTERN PULP AND PAPER WORKERS,

Intervenor.

_____

**No. 24-2102**

_____

NATIONAL LABOR RELATIONS BOARD,

Petitioner,

v.

GARTEN TRUCKING LC,

Respondent.

_____

On Application for Enforcement of an Order of the National Labor Relations Board.  (10-CA-279843;  10-CA-280804;  10-CA-281786;  10-CA-282554;  10-CA-296060;  10-RC-279259)

_____

Submitted:  September 30, 2025                    Decided:  February 18, 2026

_____

Before HARRIS, HEYTENS, and BENJAMIN, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Benjamin wrote the opinion in which Judge Harris and Judge Heytens joined.

_____

**ON BRIEF:**    Agnis C. Chakravorty, King F. Tower, WOODS ROGERS VANDEVENTER BLACK PLC, Roanoke, Virginia, for Petitioner/Cross-Respondent.  William B. Cowen, Acting General Counsel, Stephanie Cahn, Acting Deputy General Counsel, Peter Sung Ohr, Deputy General Counsel, Ruth E. Burdick, Deputy Associate General Counsel, Meredith Jason, Assistant General Counsel, Elizabeth A. Heaney, Supervisory Attorney, Joel A. Heller, NATIONAL LABOR RELATIONS BOARD, Washington, D.C., for Respondent/Cross-Petitioner.

_____

Unpublished opinions are not binding precedent in this circuit.

2

DEANDREA GIST BENJAMIN, Circuit Judge:

Garten Trucking LC ("Garten") petitions the court for review of a National Labor Relations Board ("Board") decision and order, which found that Garten had interfered with and discouraged labor organization in violation of 29 U.S.C. § 158(a)(1), (3) of the National Labor Relations Act, 29 U.S.C. §§ 151-169 (the "NLRA"). The Board specifically took issue with Garten's interference with its employees' efforts to elect the Association of Western Pulp and Paper Workers (the "Union") as their bargaining representative. The Board imposed a *Gissel* bargaining order, requiring Garten to bargain with the Union, and a notice-reading and cease-and-desist order. *NLRB v. Gissel Packing Co.*, 395 U.S. 575 (1969). The Board now seeks enforcement of its order. For the foregoing reasons, we grant the Board's application for enforcement and deny Garten's petition for review.

I.

A.

Garten is a small family-run trucking business in Covington, Virginia, that transports paper for WestRock paper mill. Garten employees sought to elect the Union as their bargaining representative. At the time, Garten employed 109 employees, meaning the Union needed to collect 55 votes to succeed. But as union organizing began, Garten managers began questioning their employees about union activity and making statements about the Union during company meetings.

3

For example, George Rose, a Garten supervisor, brought Shannon Morgan, one of his direct reports, into his office to discuss the ongoing union campaign. Rose told Morgan that he heard rumors about the Union, that he believed he knew who started the campaign, that he heard the exact number of union authorization cards signed, and that he thought she might know who started the campaign. Morgan was unwilling to discuss union activity with him.

The same day, Rose approached Jeff Baker, another of his direct reports, and asked him about the union campaign, about which union was being considered, and about which employees contacted the Union. Baker answered some questions but denied knowing who contacted the Union, although he was responsible for making contact.

At a company meeting the next day, Garten co-owner Tommy Garten told employees he heard that employees were talking with a union. He said Garten's contract with WestRock would expire in 14 months and it would not be renewed if employees unionized, but that he would likely renew the contract if they voted against the Union.

At a subsequent company meeting a few weeks later, Tommy Garten again emphasized the time remaining on WestRock's contract. He stated Garten would shut down if a union came in and told employees that if they voted to unionize, another company would come in, and they would be out of a job.

Garten also disciplined two employees for engaging in union activity on the job in violation of the company's employee handbook policy. Garten's policy provides that

4

"[e]mployees may not solicit . . . to other employees during their own work time, to other employees who are working, or [in] areas where customers are present." J.A. 2209.[1]

Garten first disciplined driver Allen Pullin. During one of Pullin's lunch breaks, he asked two other employees if they knew about the Union and asked for their thoughts on the Union. One coworker said they were happy with what they had, and the other did not respond. Pullin asked no other questions. General Manager Ben Strozier issued Pullin a written warning for soliciting employees to sign union cards during work hours in violation of the company's solicitation policy. Pullin said he was at lunch and thus did not violate the policy.

Second, driver Ray Humphries was disciplined for talking with a coworker while on a break and asking the coworker's opinion on the Union. The coworker responded he needed to discuss the Union with his family and Humphries stated he had union cards if the coworker later became interested. Tommy Garten called Humphries on his personal cellphone and said he heard Humphries was soliciting for the Union and that this was not allowed on WestRock property. Humphries was issued a written warning by Strozier similarly for soliciting while on duty in violation of Garten's solicitation policy.

At one point, the Union collected 61 union authorization cards (expressing support for the Union and intent to vote to unionize). About a month after the alleged unfair labor

---

[1] Citations to "J.A." refer to the joint appendix filed by the parties. The J.A. contains the record on appeal from the Board. Page numbers refer to the "J.A. #" pagination.

practices, the Union held a representation election. Union representation was ultimately rejected in a 65-30 vote against representation.

B.

The Union alleged multiple unfair labor practices by Garten in violation of § 158(a)(1) and (3) of the NLRA. The issues were heard before an administrative law judge (ALJ). The ALJ found that Garten committed unfair labor practices in response to union activity and interfered with its employees' rights.

The Board adopted the ALJ's findings and determined that Garten had violated employees' rights in four distinct ways. First, it determined Rose's questioning of Morgan and Baker constituted interrogation and created an impression of surveillance in violation of § 158(a)(1). Second, the Board found that Tommy Garten's statements at company meetings amounted to threats violating § 158(a)(1). Third, it determined that Garten disciplined its employees in violation of § 158(a)(3) because Garten lacked an honest belief that its employees were engaged in misconduct. Fourth, the Board found that Garten's solicitation policy was overbroad, a violation of § 158(a)(3).

The Board then made separate findings to craft and impose proportional remedies. It determined that the effects of Garten's coercive conduct were so pervasive that employees would be best protected by a *Gissel* bargaining order, requiring Garten to bargain with the Union. As other remedies, the Board also imposed a notice-reading order and a cease-and-desist order.

Garten petitioned this court for review, and the Board cross-applied to enforce the order. The Union was allowed to intervene in these proceedings in support of the Board.

6

We have jurisdiction to consider Garten's petition and the Board's cross-application pursuant to 29 U.S.C. § 160(e) and (f). First, we address the Board's findings regarding Garten's unfair labor practices. Second, we consider the *Gissel* order and other remedies implemented by the Board. For the following reasons, we grant the Board's application for enforcement.

## II.

Our review is confined to determining whether, considering the record as a whole, the Board's findings are supported by substantial evidence. *Intertape Polymer Corp. v. NLRB*, 801 F.3d 224, 230 (4th Cir. 2015). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Medeco Sec. Locks, Inc. v. NLRB*, 142 F.3d 733, 742 (4th Cir. 1998)). "It is 'more than a scintilla but less than a preponderance.' " *Vance v. NLRB*, 71 F.3d 486, 489 (4th Cir. 1995) (quoting *NLRB v. Peninsual Gen. Hosp. Medical Ctr.*, 36 F.3d 1262, 1269 (4th Cir. 1994)).

"[W]e must accept the Board's factual findings based on credibility determinations 'absent extraordinary circumstances. Exceptional circumstances include those instances when a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.' " *Intertape*, 801 F.3d at 231 (citation omitted).

We do not "displace the Board's choice between two fairly conflicting views of the evidence." *S.C. State Ports Auth. v. NLRB*, 75 F.4th 368, 378 (4th Cir. 2023) (internal alterations omitted) (quoting *NLRB v. Pepsi Cola Bottling Co. of Fayetteville*, 258 F.3d

7

305, 310 (4th Cir. 2001)). "We accord due deference to the reasonable inferences that the Board draws from the evidence." *Grinnell Fire Prot. Sys. Co. v. NLRB*, 236 F.3d 187, 195 (4th Cir. 2000) (citing *NLRB v. Brown*, 380 U.S. 278, 292 (1965)). This is "regardless of whether we might have reached a different conclusion in the first instance." *Id.* at 195 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

Garten asserts that no substantial evidence supports the Board's ruling that Garten interrogated its employees and created an impression of surveillance in doing so, made threats at company meetings, unlawfully disciplined its employees, or maintained an unlawful solicitation policy. We disagree.

A.

The Board first adopted the ALJ's findings that Garten interrogated and created an impression of surveillance among employees in violation of § 158(a)(1). We agree with the Board's determination and hold there is substantial evidence in the record that supports the Board's finding that Garten's actions coerced its employees.

The NLRA provides that it is an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed" in the Act, such as the right to organize. § 158(a)(1). An employer violates § 158(a)(1) when an employer's conduct "reasonably tend[s] to coerce or intimidate employees." *NLRB v. Grand Canyon Min. Co.*, 116 F.3d 1039, 1044 (4th Cir. 1997). The coerciveness of an employer's conduct is a question "for the specialized experience of the NLRB." *Id.* An employer also violates § 158(a)(1) when it questions employees about union views or activity, if the questioning "had a reasonable tendency in the totality of the circumstances

8

to intimidate." *Standard-Coosa-Thatcher Carpet Yarn Div., Inc. v. NLRB*, 691 F.2d 1133, 1137 (4th Cir. 1982) (quoting *NLRB v. P.B. & S. Chemical Co.*, 567 F.2d 1263, 1267 (4th Cir. 1977)).

To determine whether the questioning of employees is coercive, such that it amounts to interrogation, "we must consider a variety of factors including the history of employer hostility to the union, the nature of information sought, the identity of the questioner, and the place and method of questioning." *Intertape*, 801 F.3d at 231 (cleaned up). We also consider "whether the employee was reluctant to discuss unionization." *Id.*

Alternatively, to determine whether an employer created an impression of surveillance, we consider objectively if "the employer's conduct, under the totality of the circumstances, was such as would tend to interfere with, restrain, or coerce employees in the exercise of their rights." *Id.* at 236 (cleaned up). Even one comment to one employee is enough to establish an impression of surveillance. *See Grand Canyon*, 116 F.3d at 1045. Conveying one knows the person responsible for bringing in a union is violative of § 158(a)(1). *Dillingham Marine & Mfg. Co.*, 239 NLRB 904, 909 (1978), *enforced*, 610 F.2d 319 (5th Cir. 1980).

The Board determined Garten interrogated and created an impression of surveillance of its employees based on Rose's conversations with Morgan and Baker. It found that Rose's questioning amounted to coercive interrogation because both employees were reluctant to discuss the union. And Baker, the Garten employee that contacted the Union, denied knowing who made contact. The Board also found that Rose indicated that he knew who started the campaign and his mention of the exact number of union cards

9

signed so far (at a time when the union campaign was not public) constituted an impression of surveillance.

Garten challenges only the credibility determinations of certain witness testimony made by the ALJ and the Board. Garten attacks Baker's credibility as he was untruthful regarding unrelated matters. It asserts Rose's comments to Morgan and Baker were a result of things he heard in the company "rumor mill," not a byproduct of employee surveillance. Appellant's Br. (ECF No. 26) at 28.

These challenges present no exceptional circumstances requiring us to overturn the Board's findings. Garten has not offered sufficient evidence that the Board's credibility determination was unreasonable nor evidence that sufficiently contradicts the Board's findings of fact. But even without Baker's testimony, there is substantial evidence in the record to support the Board's finding that these unfair labor practices occurred. Specifically, the Board's reasoning was grounded in Morgan's testimony that Rose asked questions that she was reluctant to answer, and that his discussion with her created an impression that he was surveilling her. Accordingly, we agree with the Board that there is substantial evidence in the record to support its finding that Garten interrogated its employees.

B.

Second, the Board found that Tommy Garten's statements at company meetings amounted to threats of job loss and plant closure in violation of § 158(a)(1). We also hold that there is substantial evidence in the record to support the Board's findings regarding threats.

10

Employers may discuss views on union activity generally, "so long as the communications do not contain a threat of reprisal or force or promise of benefit." *Gissel*, 395 U.S. at 619 (cleaned up). An employer may "predict the precise effect of Unionization" but "when coupled with the threat of plant closure, the Board is justified in concluding . . . that an unfair labor practice occurred." *Weis Markets, Inc. v. NLRB*, 265 F.3d 239, 244 (4th Cir. 2001).

The Board concluded that Tommy Garten's statements at company meetings constituted threats of job loss and plant closure. The Board relied on multiple witnesses that corroborated the statements made at the meetings. The Board specifically noted that Garten failed to offer contradictory evidence of what was said at each of those meetings.

Garten contends the ALJ and the Board flatly disregarded the testimony of Garten management, which, in sum, included broad, categorical denials of the events alleged (such as the interrogations or company meetings) without specific testimony contrary to the allegations. It argues instead that comments by leadership were ultimately misconstrued, and without a recording, it could not clear up those discrepancies.

We hold there are no exceptional circumstances requiring we overturn the Board's credibility determinations of witness testimony. Garten did not present evidence contradicting the Board's findings. Instead, Garten asks the court to accept its blanket denials of the veracity of certain statements, and to view those denials as exceptional circumstances warranting our disregard of the facts in the record. Several witnesses testified about the statements made by Garten management in different meetings. Thus, we defer to such statements as substantial evidence that supports the Board's findings.

11

C.

Third, the Board found Garten unlawfully disciplined its employees in violation of § 158(a)(3). We hold there is substantial evidence in the record that supports the Board's findings.

It is an unfair labor practice for an employer "by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." § 158(a)(3). An employer violates § 158(a)(3) when it discharges an employee for engaging in protected activity when, in fact, the employee was not guilty of that misconduct. *NLRB v. Burnup & Sims, Inc.*, 379 U.S. 21 (1964). The burden rests on the employer to show "that it held an honest belief that the discharged employee engaged in misconduct. If the employer meets its burden, the burden shifts to the [g]eneral [c]ounsel [of the NLRB] to show that the employee did not, in fact, engage in the asserted misconduct." *Roadway Express, Inc*, 355 NLRB 197, 204 (2010), *enforced* 427 F. App'x 838 (11th Cir. 2011).

First, the Board determined Garten did not have an honest belief that Pullin and Humphries were engaged in misconduct when talking to other employees about the Union. It determined that the relevant conversations took place during breaks, not working hours, meaning neither employee violated the company's solicitation policy.

Garten argues that Pullin and Humphries were guilty of misconduct and thus disciplinary action was lawful. It asserts that Strozier's warnings and the relevant timecards indicate Pullin and Humphries solicited during working hours. Garten further

12

argues its policy is lawful because Garten does not enforce the policy when someone is not working.

We agree with the Board's finding that Garten has not met its burden. As relied on by the Board, Garten only offered Strozier's warnings and the relevant timecards at issue to support its claim. But Garten did not offer employee testimony from those who complained of the misconduct to Strozier. It offered only Strozier's notes, which stated the complainant-employees indicated they were on duty when each of the alleged conversations occurred. The timecards also do not specify when Garten employees take breaks, nor do Garten employees have an assigned lunch or break time. Considering Pullin and Humphries testified they only spoke to fellow employees during lunch breaks and never solicited union card signatures, the Board appropriately found Garten had not met its burden.

## D.

Fourth, the Board found Garten maintained an unlawful company solicitation policy in violation of § 158(a)(3). We hold there is substantial evidence in the record that supports the Board's findings.

Employees may solicit coworkers on company property so long as they do so outside of working hours and a company rule to the contrary is presumptively prohibited. *NLRB v. Lexington Chair Co.*, 361 F.2d 283 (4th Cir. 1966). The Board took issue with Garten's solicitation policy at large which states that "[e]mployees may not solicit . . . to other employees during their own work time, to other employees who are working, or [in] areas where customers are present." J.A. 2209. It found the phrase "or [in] areas where

13

customers are present" problematic, determining the policy implied that, during nonworking times, employees may not solicit. The Board determined the policy was overbroad in violation of § 158(a)(3).

We agree with the Board's determination that Garten's employee handbook policy is unlawfully broad. It leaves open whether employees may solicit, even outside of working hours, when in an area a customer *could* be present. Further, Garten has offered no evidence that it only enforces the policy when employees solicit during working hours. And ultimately, this argument does not resolve the Board's primary concern that the policy could apply during nonworking hours in violation of § 158(a)(3).

### III.

The Board imposed a *Gissel* order, requiring Garten to bargain with the Union, and other remedies, such as notice-reading and cease-and-desist orders. We hold the Board acted within its discretion in imposing these remedies.

The Board maintains broad discretion to craft orders that remedy unfair labor practices. *NLRB v. Williams Enters., Inc.*, 50 F.3d 1280, 1289 (4th Cir. 1995). Generally, "[i]n fashioning its remedies . . . the Board draws on a fund of knowledge and expertise all its own, and its choice of remedy must therefore be given special respect by reviewing courts." *Gissel*, 395 U.S. at 612 n.32. We enforce the Board's choice of remedy " 'unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the NLRA.' " *Fibreboard Paper Prods.*

14

*Corp. v. NLRB*, 379 U.S. 203, 216 (1964) (citing *Virginia Elec. & Power Co. v. NLRB*, 319 U.S. 533, 540 (1943)).

A.

The Board may order an employer to bargain with a union in one of two circumstances: (1) "exceptional cases marked by outrageous and pervasive unfair labor practices," and (2) in "less extraordinary cases marked by less pervasive practices which nonetheless still have the tendency to undermine majority strength and impede the election processes." *Gissel*, 395 U.S. at 613–14. The Board applied the second category, which requires (1) the union once had majority status, (2) the employer committed unfair labor practices that caused majority status to dissipate, (3) the possibility of erasing the effects of past practices to ensure a fair election through traditional remedies is slight, and (4) employees' sentiments expressed in union cards would be better protected by a bargaining order than a new election. *Id.* at 614.

A *Gissel* order is justified "unless [there is] a very strong showing negat[ing] the inference of lasting effects." *Standard-Coosa-Thatcher*, 691 F.2d at 1144. The employer's violations alone do not establish a future election will be unfair, as mitigating circumstances may exist and alter the seriousness of the conduct at issue. *NLRB v. So-Lo Foods, Inc.*, 985 F.2d 123, 126 n.5 (4th Cir. 1992). The Board must make specific and detailed findings about "the likelihood of recurring misconduct, the residual impact of unfair labor practices, considering whether that effect has been or will be dissipated by the passage of time, and the efficacy of [ordinary] remedies" before implementing a *Gissel* order. *Evergreen Am. Corp. v. NLRB*, 531 F.3d 321, 329–30 (4th Cir. 2008) (cleaned up);

15

J.A. 2214 n.21.  But hallmark violations such as "[t]hreat of plant closure . . . standing alone, may support a bargaining order."  *So-Lo Foods, Inc.*, 985 F.2d at 127 (citation omitted).  Such violations "are so coercive that their presence will support the issuance of a bargaining order unless some significant mitigating circumstance exists."  *Id.*  (citation omitted).

To establish factors one and two, the Board found the Union once had majority status when 61 of 109 employees, or 56%, signed union cards.  It determined that, after the union campaign began, Garten committed several unfair labor practices, including interrogation, surveillance, unlawful discipline, and the most flagrant, threats of job loss, such that the majority was undermined and the ability of a fair future election was significantly impeded.  The Board then considered its previous decision against Garten where it found an unfair labor practice occurred,[2] and taken together with the present hallmark violation of threatening job loss, found factors three and four to be met—that it was highly unlikely that the effects of Garten's coercive conduct would be easily erased.  Accordingly, the Board found that employee sentiments would be best protected by a *Gissel* bargaining order.

---

[2] This court enforced the order against Garten after one of the *current* co-owners, Robert "Dizzy" Garten, blamed the Union for employees not receiving raises through an employee messaging board in violation of § 158(a)(1).  *Garten Trucking LC v. NLRB*, 139 F.4th 269 (4th Cir. 2025) (emphasis added).  The Board cites the court's decision in its petition for enforcement here; however, that case was not decided at the time the Board issued its order.

16

For factors one and two, Garten challenges the Board's interpretation of the record. Garten raised the same argument before the Board, that some of the authorization cards should not count because some employees wanted their cards back after initially submitting them. But as the Board found, Garten has not offered any evidence that the employees that requested their union cards back did so *prior* to the unfair labor practices.

It is clear to the court that the Union maintained majority status when 61 of 109 employees, or 56%, signed union authorization cards prior to Garten's multiple unfair labor practices as discussed in Part II.A-D. The threats made by Garten management at company meetings took place both during the union authorization card collection period and leading up to the union election. Employees were also disciplined after the collection period closed. If anything, evidence that an employee wanted their union authorization card returned after submission actually supports a finding that the Union's majority status dissipated due to Garten's unfair labor practices. We agree with the Board's findings on factors one and two—that the Union had majority status and that Garten committed unfair labor practices resulting in the Union's majority status dissipating.

Next, Garten challenges the Board's analysis of factors three and four. It argues that the Board failed to independently consider employee turnover and passage of time. Garten relies on *Overnite Transportation Co. v. NLRB*, 280 F.3d 417 (4th Cir. 2002), a case in which the court overturned a *Gissel* order holding that the Board ignored mitigating circumstances that suggested against imposing such a remedy. There, the court determined the lasting effects of unfair labor practices had subsided as the owners settled nearly all the

17

unfair labor practices complained of, subsequent fair elections had been held, and many executives involved in the unfair labor practices had since left. *Id*. at 438.

But *Overnite* is dissimilar to Garten's circumstances. No settlements have been entered, nor fair elections held. No evidence was offered to show significant employee or management turnover. In fact, this is not Garten's first set of unfair labor practice violations. The court recently enforced a separate Board order against Garten for separate unfair labor practices. *See Garten Trucking LC v. NLRB*, 139 F.4th 269 (4th Cir. 2025).

Further, Garten has not made a very strong showing negating the inference of lasting effects. The Board considered the evidence before it, made specific and detailed findings, and reasonably found that fair elections would be ensured and employee sentiments would be best protected by a bargaining order. We agree with the Board's findings and hold it properly imposed a *Gissel* order.

## B.

The Board additionally imposed both notice and cease-and-desist orders. It specifically selected these remedies "in light of [Garten's] extensive and serious unfair labor practices" while weighing the "numerosity and egregiousness" of Garten's violations. J.A. 2215–16. The notice order requires Garten management to publicly read a notice attached to the order, J.A. 2217–18, that reiterates employee protections under the NLRA. The cease-and-desist order instructs that Garten must "cease and desist in any other manner from interfering with, restraining, or coercing its employees" in exercising their rights. J.A. 2216.

18

Garten asserts the Board improperly imposed these remedies because substantial evidence in the record does not support the need for these remedies. We enforce the Board's choice of remedy "unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the NLRA." *Gissel*, 395 U.S. at 612 n.32 (internal quotations omitted). Garten has offered no evidence that the Board abused its discretion by imposing these remedies.

Therefore, we defer to the knowledge and expertise of the Board and hold it acted within its discretion in imposing both the notice order and cease-and-desist order.

IV.

For the reasons above, we deny Garten's petition for review and grant the Board's application for enforcement.

*PETITION FOR REVIEW DENIED;*
*CROSS-APPLICATION FOR ENFORCEMENT GRANTED*

19